1   C. D. Michel – SBN 144258
    cmichel@michellawyers.com
2   Joshua Robert Dale – SBN 209942
    jdale@michellawyers.com
3   Konstadinos T. Moros – SBN 306610
    kmoros@michellawyers.com
4   Alexander A. Frank – SBN 311718
    afrank@michellawyers.com
5   MICHEL & ASSOCIATES, P.C.
    180 E. Ocean Blvd., Suite 200
6   Long Beach, CA 90802
    Telephone: (562) 216-4444
7   Facsimile:   (562) 216-4445
    www.michellawyers.com
8
    Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated and Gun
9   Owners of California, Inc.

10  Donald Kilmer-SBN 179986
    Law Offices of Donald Kilmer, APC
11  14085 Silver Ridge Road
    Caldwell, Idaho 83607
12  Telephone: (408) 264-8489
    Email: Don@DKLawOffice.com
13
    Attorney for Plaintiff The Second Amendment Foundation
14

15              **IN THE UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                    **WESTERN DIVISION**

18  CALIFORNIA RIFLE & PISTOL          | **CASE NO:**
    ASSOCIATION, INCORPORATED;
19  THE SECOND AMENDMENT               | **COMPLAINT FOR DECLARATORY**
    FOUNDATION; and GUN OWNERS         | **AND INJUNCTIVE RELIEF**
20  OF CALIFORNIA, INC.,
                                        | **42 U.S.C. §§ 1983 & 1988**
21                   Plaintiffs,

22              v.

23  CITY OF GLENDALE; GLENDALE
    CHIEF OF POLICE CARL
24  POVILAITIS, in his official capacity;
    GLENDALE CITY CLERK SUZIE
25  ABAJIAN, in her official capacity;
    and DOES 1-10,
26
                 Defendants.
27

28

                              1
    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and Gun Owners of California, Inc. (collectively "Plaintiffs"), and allege against Defendants City of Glendale, Glendale Chief of Police Carl Povilaitis, and Glendale City Clerk Suzie Abajian (collectively "the City") as follows:

## INTRODUCTION

1.     On July 17, 2022, a gunman opened fire at Greenwood Park Mall in Greenwood, Indiana. Tragically, the assailant managed to kill three people. Fortunately, his rampage was quickly cut short before it could get much worse thanks to the actions of 22-year-old Elisjsha Dicken. Dicken, who was legally carrying a concealed handgun, fired on the attacker several times from the impressive distance of 40 yards, killing him. Dicken's actions likely saved the life of his girlfriend who was there with him, and countless others as well.[1]

2.     On August 4, 2018, 150 children at a back to school event in a Florida park were engaging in festivities when a shooter opened fire. Before anyone could be injured or killed, an unnamed armed bystander who was legally carrying a handgun shot down the gunman. Deputy Chief Todd Hutchinson commented "We are extremely grateful that nobody else was injured in this incident…This suspect opened fire at a crowded public park, this could have been so much worse."[2]

---

[1]  National Review Editors, *A Good Guy With a Gun,* National Review, (July 20, 2022, 6:30 AM), < https://www.nationalreview.com/2022/07/a-good-guy-with-a-gun/> (as of October 6, 2022) ("Just 15 seconds elapsed between the beginning of the shooting at the Greenwood Park Mall and Elisjsha Dicken's intervening. Had Dicken not been there, the three innocent people who were killed would have been joined by many others.").

[2]  Kyle Swenson, *Bullets flew at a Florida 'Peace in the City' event for kids. An armed bystander was ready.*, Washington Post (August 7, 2018, 5:00 AM), <https://www.washingtonpost.com/news/morning-mix/wp/2018/08/07/bullets-flew-at-a-florida-peace-in-the-city-event-for-kids-an-armed-bystander-was-ready/> (as of October 6, 2022); see also Chip Skambis, *Police: Armed bystander takes down gunman at Titusville back-to-school event*, WFTV 9 ABC (August 24, 2018, 10:41 AM), <https://www.wftv.com/news/local/police-investigate-shooting-at-titusville-park/806192101/> (as of September 7, 2022).

3.      There are countless more examples of legally armed men and women heroically stopping criminals and saving lives, many of which have been recorded by the media. Such incidents range from people who stopped or mitigated mass killing attempts, to those who prevented far more common muggings or assaults. One database has recorded over 550 defensive gun use incidents so far in 2022 alone.[3] Such databases can of course only capture incidents reported by the media, leaving out many defensive gun uses that did not make the news.

4.      The two heroic individuals described above, as well as the thousands more who in recent years have defended themselves with their lawfully carried handguns, come from diverse backgrounds and all walks of life. But many of them have something in common. Had their heroic actions taken place in much of the City of Glendale—which makes it unlawful to possess a firearm on all city-owned or city-controlled property— these individuals would have likely been in violation of Glendale's Municipal Code.

5.      Glendale Municipal Code section 9.25.040(A) (the "Ordinance") generally bans possession on "city property" of any firearm or ammunition, and does not make any exception for those who have a license to carry a concealed handgun ("CCW Permit"). The term "city property" is defined to include effectively all public property within the City of Glendale, as well as some private property, with the only exception being streets/roads and sidewalks. In sum, other than streets/roads and sidewalks, the Ordinance makes it unlawful for the typical, law-abiding adult to possess a firearm or ammunition on *any* public property, publicly controlled-property, or public-affiliated private property in the City of Glendale.

---

[3]  Heritage Staff, *Defensive Gun Uses in the U.S.*, Heritage, (July 26, 2022), <https://datavisualizations.heritage.org/firearms/defensive-gun-uses-in-the-us/> (as of October 6, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

6.      For example, Elisjsha Dicken stopped a shooting at the Greenwood Park Mall. An equivalent major shopping complex in Glendale is the Americana at Brand. The Americana is next to several parking structures people regularly use to park at when visiting, including the Orange Street Parking Structure, the Exchange Parking Garage, and the Marketplace Parking Structure. All three of those structures are operated by the City of Glendale and thus are off limits for anyone possessing a firearm. Had Mr. Dicken or someone like him parked their cars in such a structure before going to the Americana, they'd be in violation of the Ordinance.[4]

7.      The nameless hero in Florida who stopped the shooting at a park hosting a back to school event would likewise be in legal trouble if his action had occurred at a Glendale park. The City operates over 40 parks and recreation facilities and several playgrounds, and all of them are off limits for anyone possessing firearms.

8.      Off limits for anyone possessing firearms *who respects the law*, that is. Such limitations only actually stop law abiding people from possessing firearms, and such people are not a threat anyway. Laws like the Ordinance do not stop criminals and mass killers who are not troubled by violating rules related to carrying firearms. Instead, they give individuals with ill-intent "soft targets" where people are unlikely to be armed to resist them. In sum, the Ordinance burdens the right of self-defense for the law-abiding, while empowering violent predators who know that they are unlikely to face armed resistance at many public places in Glendale.

9.      Glendale's Ordinance is plainly unconstitutional. The Supreme Court has unequivocally confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y.*

_____
[4] Moreover, even if an individual walked to the mall to avoid this issue, if *any* of the places they passed through, unbeknownst to the individual, were privately owned but were under some contract with the City, they would also be illegal to possess a firearm in under the Ordinance.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*State Rifle & Pistol Association v. Bruen*, 597 U.S. at __, 142 S. Ct. 2111 (2022) ("*Bruen*"). That right extends to any public area that is not a "sensitive place." *District of Columbia v. Heller*, 554 U.S. 570, 592, 626-27 (2008).

10.     The Supreme Court has not expressly established the universe of "sensitive places" where the right can be restricted. It has, however, provided the examples of schools and certain government buildings such as "legislative assemblies, polling places, and courthouses . . . ." *Bruen*, 142 S. Ct at 2133. Beyond those specific places, the Court has instructed courts to look to history in determining whether particular areas were considered "sensitive places" at either the time of our Nation's founding or the adoption of the Fourteenth Amendment. *Id.* at 2135-36. While it noted that there may be "new and analogous sensitive places" to those historically considered such, the Court also noted that the term could not be so broad as to "include all 'places where people typically congregate. . . .'" *Id.* at 2133 (citation omitted).

11.     Plaintiffs are non-profit civil rights organizations representing their members who hold CCW permits and are affected by the Ordinance either because they live in Glendale or visit the City regularly.

12.     Plaintiffs bring this action to vindicate their members' Second Amendment rights to publicly bear arms for self-defense in non-sensitive places. The Ordinance infringes that right by criminalizing the mere possession of any firearm or ammunition on effectively all public property (as well as some private property) within the City of Glendale, predominantly including areas that have *not* historically been considered "sensitive places" to which Second Amendment protections do not extend.

13.     The City has the burden to prove that all areas included in the term "city property" are "sensitive places." *Bruen*, 142 S. Ct at 2129-30 (explaining that the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"). The City cannot meet

that burden. While a few particular portions of "city property" could conceivably qualify as a "sensitive place,", how the City defines that term is unconstitutionally overbroad. Indeed, the Ordinance restricts firearm and ammunition possession on *all* city property, including in open, unsecure places like parking lots, parking structures, plazas, and (literally) open spaces. No historical analogue for restricting arms in those areas exists. Otherwise, the right to bear arms could not be exercised in populated areas, a notion the Supreme Court has expressly rejected. *Id*. at 2133-34.

14.    Accordingly, Plaintiffs seek declaratory relief confirming that (1) the Ordinance's expansive definition of "city property" includes places that have not historically been considered "sensitive" to which Second Amendment protections do not extend; and (2) the City's total restriction on average residents possessing a firearm or ammunition in those non-sensitive places violates the Second and Fourteenth Amendments.

15.    Plaintiffs also seek preliminary and permanent injunctive relief enjoining the City from enforcing the Ordinance.

## PARTIES

### Plaintiffs

16.    Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA") is a non-profit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4) with its headquarters in Fullerton, California. Founded in 1875, the CRPA seeks to defend the civil rights of all law-abiding individuals, including the fundamental right to bear firearms for lawful purposes, including the core purpose of self-defense.

17.    CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors,

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

professionals, firearm experts, and the general public.

18.    CRPA members with CCW permits are harmed by the Ordinance because it effectively makes their permits pointless in much of the City of Glendale by declaring a multitude of places off limits for carry.

19.    Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 700,000 members and supporters nationwide, including thousands of members in California, many of whom reside in Los Angeles county and live in or visit Glendale.

20.    SAF is dedicated to promoting a better understanding about our constitutional heritage to privately own, possess, and carry firearms through educational and legal action programs designed to better inform the public about gun control issues. SAF has been a pioneer in innovative defense of the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also expends significant sums of money sponsoring public interest litigation to defend its own interests to disseminate information to like-minded individuals, in an individualized setting like a gun show, but SAF also seeks to defend the interests of its members in lawsuits like this present effort. SAF members with CCW permits are harmed by the Ordinance because it effectively makes their permits pointless in much of the City of Glendale by declaring a multitude of places off limits for carry.

21.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit organization incorporated under the laws of the state of California, with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California. GOA members with CCW permits are harmed by the Ordinance because it effectively makes their permits pointless in much of the City of Glendale by declaring a multitude of places off limits for carry.

22.    It should be noted that Plaintiffs did not file this suit alongside

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

individual plaintiffs because they could not, in good conscience, bring individuals into this litigation until the newly enacted California Code of Civil Procedure section 1021.11 is enjoined. All three Plaintiffs have filed lawsuits to stop that blatantly unconstitutional fee shifting law, and once it is enjoined, this complaint will likely be amended to include individual plaintiffs as well. That said, Plaintiffs undoubtedly have associational standing on behalf of their members, and individual plaintiffs are not necessary for this lawsuit to proceed.

23.    Members of the associational Plaintiffs with CCW permits intend to immediately to exercise their constitutional right to carry a firearm in public for self-defense in all non-sensitive places in Glendale, but only refrain because they are precluded from doing so because of the Ordinance. But for Defendants' enforcement of municipal laws that prohibit members of the associational Plaintiffs with CCW permits from lawfully carrying a firearm in public, they would immediately begin carrying a firearm in public for self-defense in all non-sensitive places in Glendale.

**Defendants**

24.    Defendant City of Glendale (the "City") is an incorporated city in Los Angeles County, California. The City is the entity that enacted, and is beneficially interested in, the Ordinance.

25.    Defendant Carl Povilaitis is the Chief of Police of the Glendale Police Department. He is sued in his official capacity. He is charged with enforcing the Ordinance, as codified in the Glendale Municipal Code.

26.    Defendant Suzie Abajian is the City Clerk of Glendale. She is sued in her official capacity. She is charged with recording, keeping, and printing the ordinances of the City, including the Ordinance that is the subject matter of this Complaint.

27.    Based on information and belief, Plaintiffs allege that Does 1 through 10 are responsible for establishing, enforcing, or administering Glendale's

8

unconstitutional Ordinance, or are otherwise responsible for denying or limiting Plaintiffs' members' right to bear arms. Plaintiffs will seek leave to amend this Complaint when the true names and identities of Does 1 through 10 are ascertained.

## JURISDICTION AND VENUE

28.    The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

29.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and their claim for attorneys' fees is authorized by 42 U.S.C. §1988.

30.    Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Glendale is located within the Western Division of the Central District.

## GENERAL ALLEGATIONS

### [Right to Keep and Bear Arms]

31.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST amend. II.

32.    The Supreme Court has held that the Second Amendment right to keep and bear arms is a fundamental, individual right that includes at its core the right of law-abiding, competent adults to "possess and carry weapons in case of

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

confrontation." *Heller*, 554 U.S. at 592.

33.     The Supreme Court has also held that the Second Amendment right to keep and bear arms, by way of its incorporation into the Fourteenth Amendment, applies equally to prohibit infringement of that right by state and local governments. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

34.     *Heller* established a "text, history, and tradition" framework for analyzing scope of the Second Amendment questions. *Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. The Court then assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791, and thereafter. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era analog, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

35.     Most recently, the Supreme Court confirmed and clarified *Heller*'s historical approach to analyzing the Second Amendment's scope:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command".

*Bruen*, 142 S. Ct. at 2126.

36.     In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id*. at 2122.

37.     To be sure, the Supreme Court has noted that the carrying of arms may be restricted in certain "sensitive places." But the Court has also noted that "the historical record yields relatively few 18th- and 19th-century 'sensitive places'

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

where weapons were altogether prohibited . . . ." *Id*. at 2133. So far, the Court has only identified schools and certain government buildings such as "legislative assemblies, polling places, and courthouses . . ." as being such "sensitive places." *Ibid*.  Further, the Court cautioned that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly…[it] would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id*. at 2134.

38.    The Second and Fourteenth Amendments thus guarantee to all law-abiding, competent adults the right to carry firearms and ammunition for self-defense in all public areas that have *not* historically been considered "sensitive places" or are analogous to such places.

**[Americans With CCW Permits are Overwhelmingly Law-Abiding]**

39.    Even before the *Bruen* ruling, over 40 states were either "shall issue," where a permit must be issued to all citizens who apply and qualify for one, or "constitutional carry," where anyone who is legally allowed to own a gun may carry a pistol concealed or openly without a permit. Millions of law-abiding Americans have legally carried firearms for years.

40.    Because California permit-issuance is done at the county level, most counties in the state were effectively "shall issue" despite the unconstitutional good cause requirement that was previously allowed to be enforced. For instance, Tehama County Sheriff's Department states on its Concealed Weapons Permits website that "Sheriff-Coroner Dave Hencratt supports the right of law-abiding citizens to keep and bear arms. In this regard, all qualified residents of Tehama County are eligible to apply for a permit to carry concealed weapons."[5] As another

---

[5]  "Concealed Weapons Permits - Tehama County Sheriff's Office," <https://tehamaso.org/administration/licenses-permits/concealed-weapons/> (as of October 6, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

example, San Joaquin County Sheriff's Department expressly states on its website that "[p]ersonal protection or self-defense is sufficient to establish good cause" for the issuance of a permit.[6]

41.    Despite most counties in California being effectively "shall issue" for a long time, there has been no crime problem resulting from people issued CCW permits in those counties. In fact, when the state recently tried to pass a law (Senate Bill 918) that would have violated the right to carry by making most public places off limits even for those with a CCW permit, it was opposed by the California State Sheriffs Association partially because of the fact that people with CCW permits almost never commit crimes and are not a problem for law enforcement. The Association stated in a letter to all members of the California State Assembly that SB 918 "greatly restricts when and where licensees may carry concealed and could severely restrict the exercising of [the right to bear arms]…*individuals who go through the process to carry concealed legally are exceedingly unlikely to violate the law*, yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety." (Italics added.)

42.    The evidence available from other states also establishes how overwhelmingly peaceable and law-abiding people with CCW permits are.  As one example, in 2020 Texas had 1,626,242 active conceal carry weapon license holders.[7] That made people with such licenses 5.7% of Texas's population, yet according to the Texas Department of Public Safety, they only committed 0.4334% of the State's serious crimes, being responsible for just 114 out of a total of 26,304 convictions. Even among those few convictions, only some of the crimes involved a gun at all. And of the ones that do, license holders are responsible an even smaller

[6] "Concealed Weapon Permit | San Joaquin County Sheriff's Office," <https://www.sjsheriff.org/concealed-weapon-permit/> (as of October 6, 2022).

[7] All data for Texas is from the Texas Department of Public Safety and can be found at <https://www.dps.texas.gov/section/handgun-licensing/demographic-reports-fiscal-year-2020> (as of October 6, 2022).

proportion of them. For example, there were 1,441 convictions for aggravated assault with a deadly weapon in 2020, but people with a valid concealed weapon license were responsible for just 4 of those, or 0.2776% of the total, again way below their 5.7% share of the population as a whole.

43.    The State of Florida confirms this phenomenon as well. As of September 30, 2022, the State had issued a total of 5,485,676 concealed weapon licenses since October 1, 1987, of which 2,578,630 are currently active.[8] In that nearly 25-year timespan, only 17,286 permits have been revoked without being subsequently reinstated, or roughly 0.3% of the total issued.

44.    Florida was the state where the modern right-to-carry movement originally gathered steam (though a handful of states had liberal permit-issuance policies before then). The State's enactment of shall-issue permitting was met with breathless predictions of wild-west style violence and "blood in the streets", but none of that happened. Indeed, at least one prominent opponent admitted his error, with Florida Representative Ronald A. Silver stating in 1990 that "There are lots of people, including myself, who thought things would be a lot worse as far as that particular situation [carry reform] is concerned. I'm happy to say they're not." Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 692-93 (1995). John Fuller, general counsel for the Florida Sheriffs Associated, added: "I haven't seen where we have had any instance of persons with permits causing violent crimes, and I'm constantly on the lookout." *Id*. The Metro Dade Police Department originally kept detailed records of every incident involving concealed weapon licensees from enactment of the new law in 1987 until August 31, 1992. They stopped doing so because the rarity of such incidents made the effort a waste of time. *Id*.

---

[8]  All data for Florida is from the Florida Division of Licensing and can be found at <https://www.fdacs.gov/Divisions-Offices/Licensing/Statistical-Reports> (as of October 6, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

45.     Finally, the State of Minnesota goes a step further and identifies not just the infrequent crimes committed by people with valid carry permits, but also what proportion of those crimes involve firearms. According to the Minnesota Department of Public Safety, the state had 387,013 valid carry permits in 2021, and only 40 permits were revoked that year.[9] In addition, 3,863 crimes were committed by people with carry permits. This sounds much larger than the statistics from Texas or Florida, but that's simply because Minnesota greatly expands the definition of what constitutes a "crime". Indeed, of those 3,863 crimes, more than 60% were DWIs or other traffic offenses. Just over 2% of the crimes, or about 80 of them, were crimes in which a firearm was used in furtherance of the crime. In other words, in Minnesota, only about 0.02% of people with carry permits used a firearm in furtherance of a crime in 2021.

46.     There are certainly more states with similar data that could be examined here, but Plaintiffs believe these three examples, along with the California State Sheriffs Association's letter regarding the failed SB 918, make the point: Even if Defendants could use "public safety" as a reason to curtail the right to carry in places that aren't truly sensitive, and they cannot because *Bruen* forbade such interest balancing, people with carry permits are dramatically more law abiding than the population as a whole and are thus very unlikely to ever pose a threat the City needs to concern itself with. Fear of CCW permit holders is completely irrational, given these statistics. The Ordinance is thus a solution in search of a problem, but unfortunately, one which dramatically violates Plaintiffs' constitutional right to carry.

**[Glendale's Ordinance]**

47.     Glendale Municipal Code section 9.25.040(A) (the "Ordinance"),

---

[9]  All data for Minnesota is from the Minnesota Department of Public Safety Bureau of Criminal Apprehension and can be found at <https://dps.mn.gov/divisions/ooc/ news-releases/Pages/BCA-Releases-2021-Permit-to-Carry-Annual-Report.aspx> (as of August 14, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

provides:

No person shall:

A.    Bring onto or possess on city property:

    i.  A firearm, loaded or unloaded.
    ii. Ammunition for a firearm.

48.    The term "city property" in the Ordinance:

Means real property, including any buildings thereon, owned, leased, or subleased by the City of Glendale ("city") and in the city's possession—or in the possession of a public or private entity, corporation, or person under contract with the city to perform a public purpose—including, but not limited to, the following property: parks, playgrounds, open space, plazas, community centers, facilities (including the Glendale Civic Auditorium, the city's civic center complex, and city libraries), parking lots, and parking structures.

*Id.* at § 9.25.030 (2022).

The term, however, "[d]oes not include the public right-of-way owned by the city, including any area across, along, on, over, upon, and within the dedicated public alleys, boulevards, courts, lanes, roads, sidewalks, streets, and ways within the city." *Id.*

49.    As of 2013, when the City made legislative findings concerning the Ordinance, City Property on which firearms were banned included, but was not limited to: 47 parks and recreation facilities (including four community centers, one golf course, three soccer fields, and sixteen ball fields), all City playgrounds, eight public libraries, three downtown parking structures and other City-owned or operated parking lots, the Glendale Civic Auditorium and civic center complex, a youth center, an emergency center,  undefined "open spaces" and "plazas," and an unknowable amount of properties in the possession of private companies under contract with the city. Plaintiffs are not aware what other property the City may own that was not listed in the 2013 findings (including property the City may have acquired or taken under its control since those findings were made) but any such property would be included as well.

50.    The term "ammunition" as used in the Ordinance "means any

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

ammunition as defined in California Penal Code section 16150 [].” *Id*. California Penal Code section 16150 includes as “ammunition” (1) any “loaded cartridges consisting of a primed case, propellant, and with one or more projectiles;” and (2) “any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding device, or projectile capable of being fired from a firearm with a deadly consequence,” but “does not include blanks.”

51.     The term “firearm” as used in the Ordinance “Means any gun, pistol, revolver, rifle, or any device, designed or modified to be used as a weapon, from which is expelled through a barrel a projectile by the force of an explosion or other form of combustion,” including any “firearm” as defined in California Penal Code section 16520; any “BB device” as defined in California Penal Code Section 16250; and any “imitation firearm” as defined in California Penal Code Section 16700(a). GLENDALE, CAL. MUNICIPAL CODE § 9.25.030 (2022)

52.     The term “unloaded” as used in the Ordinance means:

   a.  No ammunition is in the firearm’s chamber or cylinder; and

   b.  No ammunition, clip, tube, speed loader, or magazine that is compatible with the firearm and that contains ammunition is on the person who is carrying the firearm.

53.     The only exceptions to the Ordinance apply to specific, limited groups of people, such as law enforcement, military, security guards, those delivering firearms or ammunition to Glendale police, and authorized participants in entertainment productions, or to persons lawfully relinquishing their firearms to Glendale police. *Id*. at § 9.25.050.[10] There is no exception for people with valid CCW permits.

54.     The Ordinance’s related “Findings” note that “the city council, in its proprietary capacity, wishes to keep city properties free from firearms and ammunition . . ., with the [indicated] exceptions.” *Id*. at § 9.25.020. Of course, that

---

[10]  There is an exception for “using the City’s target range” but it is meaningless because no such range exists. GLENDALE, CAL. MUNICIPAL CODE § 9.25.050 (2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

violates *Bruen*, which mandates that the right to carry be allowed in all non-sensitive places.

55.     Penalties for violating the Ordinance, which the City classifies as a misdemeanor, include a fine of up to $1,000.00, imprisonment for up to six months, or both. *Id.* at § 1.20.010 (A).

### [Relevant California Firearm Laws]

56.     California law generally prohibits carrying firearms on one's person or within a vehicle (unless it is unloaded and in a locked container) in all public places[11] other than remote locations where the discharge of firearms is not prohibited. *See* CAL. PENAL CODE §§ 25850, 25400,  26350 & 26400 (Deering 2022).

57.     However, California authorizes city police chiefs and county sheriffs to issue concealed CCW permits to their residents, which licenses allow the licensees to carry a loaded handgun concealed in public. *Id.* §§ 26150-26155. Outside of certain remote locations, there is no lawful way to generally carry a firearm publicly in California other than having such a CCW permit. Californians' right to bear arms thus depends on them obtaining such license.[12] A license to carry concealed is generally valid statewide. *Id.* § 26200.

### [Abrogation of Plaintiffs' Members' Right to Bear Arms and Right to Due Process]

58.     Plaintiffs' members, or at least the overwhelming majority of them, do

---

[11]  California's carry laws do not define the term "public place." Whether a location is deemed a public place depends on the specific facts of each case and appropriately turns on whether the public can lawfully enter the area with little difficulty. *See, e.g., People v. Cruz*, 44 Cal. 4th 636, 674 (2008).

[12]  Until recently, California law required "good cause" to issue a permit. CAL. PENAL CODE § 26150(a)(2) (Deering 2022). That requirement fails under *Bruen*, as the Attorney General of California has already confirmed through a legal alert memorandum he sent out directing state and local officials to cease enforcing it. A copy of that legal alert can be found here: <https://crpa.org/news/blogs/ag-bonta-good-cause-requirement-is-unconstitutional/> (as of October 6, 2022).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

not meet any of the narrow exceptions to the Ordinance's restriction on possessing firearm or ammunition on "city property."

59.     As described above, the Ordinance prohibits members of the associational Plaintiffs with CCW permits from possessing a firearm or ammunition on almost all public property within the City of Glendale, as well as some private property if it is under contract to perform a public purpose. Indeed, the only public property where firearms or ammunition can be possessed under the Ordinance are on roads/streets and sidewalks.

60.     This of course violates the right to carry as discussed in *Bruen*. There, the Court said that while some places are sensitive, the historical record supports the existence of "relatively few" such sensitive places. *Bruen*, at 2133. None of Glendale's city property as defined in the Ordinance appears to qualify as a "sensitive place" where restrictions on firearm and ammunition possession have traditionally been allowed.[13] There is no "well-established and representative historical analogue," *id.*, for restricting carry in parks and recreation facilities, playgrounds, public libraries, parking structures and other parking lots, civic centers, undefined "open spaces" and "plazas", and properties in the possession of private companies under contract with the city.

61.     The Ordinance thus precludes Plaintiffs' members from exercising their Second Amendment rights to bear arms for self-defense in several areas where those rights are guaranteed, i.e., *non*-sensitive places.

62.     Defendants also violate Plaintiffs' members' Due Process rights by not requiring all places where carry is forbidden to put up signs clearly stating that to be the case. Members of the associational Plaintiffs with CCW permits may have no idea a particular place is off limits for carry (e.g., when they aren't aware that a parking structure they entered is owned by the City, or when a private business they

---

[13]   To the extent the City owns or operates any schools, courthouses, or closely analogous places like that which are actually sensitive under *Heller* and *Bruen*, Plaintiffs do not challenge restrictions on carrying in such places with this lawsuit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

entered is under some contract with the City, etc.), so they would be committing a crime they had no notice of ahead of time.

63.     As the Supreme Court has established, the general maxim that ignorance of the law is no excuse is limited by the Due Process requirement of notice. "Ingrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed." *Lambert v. California*, 355 U.S. 225, 228 (1957). By not requiring the posting of signs wherever the right to carry is prohibited, the City robs Plaintiffs' members who are exercising their right to carry of notice.

64.     In sum, but for the Ordinance prohibiting the carrying of firearms in non-sensitive places, members of the associational Plaintiffs with CCW permits would carry firearms and ammunition on all City property in Glendale for the lawful purpose of self-defense. They refrain from exercising that constitutional right for fear of criminal liability for violating the Ordinance, and also because due to the lack of signage notifying them whether particular places are prohibited, they would have no notice if they inadvertently carried somewhere they shouldn't.

**DECLARATORY RELIEF ALLEGATIONS**

65.     There is an actual and present controversy between the parties. Plaintiffs contend that the City's Ordinance is unconstitutional both facially and as applied to Plaintiffs' members because it precludes Plaintiffs' members and other law-abiding individuals from exercising their fundamental right to publicly bear arms in *non*-sensitive places. The City denies and disputes this. Plaintiffs desire a judicial declaration of their rights and of the duties of the City in this matter.

66.     Plaintiffs also allege that the Ordinance, in not requiring all places where carry is forbidden to post signs clearly stating so, violates the right to Due Process both facially and as applied to their members. Their members will frequently not have notice as to whether a particular place in Glendale prohibits

19

carry otherwise. Defendants deny and dispute this. Plaintiffs desire a judicial declaration of their rights and of the duties of the City in this matter on this question.

**INJUNCTIVE RELIEF ALLEGATIONS**

67.    Injunctive relief is necessary to prevent the City from enforcing its Ordinances' restrictions. If an injunction does not issue, Plaintiffs will continue to be irreparably injured by the Ordinance insofar as it precludes Plaintiffs' members from exercising rights guaranteed by the Second and Fourteenth Amendments. The City's enforcement of the Ordinance denies Plaintiffs' members the right to possess firearms or ammunition in places that they are constitutionally entitled to do so, including for the lawful purpose of carrying those arms for self-defense, without subjecting themselves to risk of criminal prosecution.

68.    The Ordinance also contains no signage requirement for places where carry is forbidden, so Plaintiffs' members have no notice of whether or not they are violating the law at many of the places they would like to carry. This violates Plaintiffs' members' Due Process rights guaranteed by the Fourteenth Amendment. To the extent that this Court deems any City property in Glendale to qualify as a "sensitive place", the City should be required to post signs notifying people of that.

69.    If not enjoined by this Court, Defendant will continue to enforce the Ordinance in derogation of Plaintiffs' members' Second and Fourteenth Amendment rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate and unascertainable, and would not fully redress any harm suffered by Plaintiffs' members as a result of being unable to engage in activity protected by the Second and Fourteenth Amendments, as they wish to do.

70.    The injunctive relief sought would eliminate that irreparable harm and allow Plaintiffs' members to exercise their right to possess a firearm and ammunition in *non*-sensitive public places, including for self-defense. Accordingly, injunctive relief is appropriate.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

71.     Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

72.      The Ordinance prohibits possession of firearms and ammunition on almost all public property within Glendale, as well as some private property. The areas that the Ordinance covers include areas that are *not* "sensitive places" where restrictions on firearm and ammunition possession have traditionally been allowed, nor are they analogous to such places.

73.     Plaintiffs' members do not qualify for any of the Ordinance's exceptions. As a result, they are prohibited from possessing a firearm or ammunition on any "city property," which term includes areas that are *not* "sensitive places."

74.     By prohibiting law-abiding adults, like Plaintiffs' members, from bearing arms for self-defense in places where the Second and Fourteenth Amendments guarantee their right to do so, the Ordinance violates those Amendments.

75.     The City is thus propagating customs, policies, and practices that deprive Glendale residents and others visiting the City of Glendale, including Plaintiffs' members, of their constitutional right to bear arms for self-defense "in case of confrontation" in *non*-sensitive public places, as guaranteed by the Second and Fourteenth Amendments.

76.     The City cannot satisfy its burden to justify these customs, policies, and practices that preclude Plaintiffs' members from exercising those fundamental rights.

77.     Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**RIGHT TO DUE PROCESS (NOTICE)**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

78.     Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

79.     The Ordinance prohibits Plaintiffs' members with CCW permits from carrying in several non-sensitive places, in violation of the Constitution. The areas that the Ordinance covers include areas that are not "sensitive places" where restrictions on firearm and ammunition possession have traditionally been allowed, nor are they analogous to such places.

80.     As a result, Plaintiffs' members are prohibited from possessing a firearm or ammunition on any of the places listed in the Ordinance, which includes many areas that are not "sensitive places".

81.     The Ordinance, however, contains no requirement that all the places it forbids Plaintiffs' members from carrying in post a sign notifying them that carry is prohibited there. Plaintiffs' members thus risk inadvertently entering a place where carry is prohibited despite their CCW permits, putting them in legal jeopardy. While some places may be obviously off limits, such as schools or courthouses, most others are not nearly as clear.

82.     In this way, the Ordinance violates Plaintiffs' members' Due Process rights by not providing them sufficient notice. "Ingrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed." *Lambert*, 355 U.S. at 228.

83.     Defendants are thus propagating customs, policies, and practices that deprive Plaintiffs' members of their constitutional right to due process, as guaranteed by the Fourteenth Amendment.

84.     Defendants cannot satisfy their burden to justify these customs, policies, and practices that violate due process.

85.     Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

## PRAYER

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     A declaration that Glendale Municipal Code section 9.25.030's definition of "city property" includes areas that are not "sensitive places" where restrictions on firearm and ammunition possession have traditionally been tolerated under the Second Amendment;

2.     A declaration that Glendale Municipal Code section 9.25.040(A) violates the Second and Fourteenth Amendments facially and as applied to Plaintiffs' members insomuch as it precludes law-abiding citizens from possessing a firearm or ammunition in public areas that are not "sensitive places" where restrictions on firearm and ammunition possession have traditionally been allowed because those Amendments guarantee the rights of responsible, law-abiding citizens to carry arms for self-defense in *non*-sensitive public places;

3.     A declaration that Glendale Municipal Code section 9.25.040(A) violates due process by not requiring signage in all places that are off limits for carry, thus robbing Plaintiffs' members of notice regarding whether or not they are violating the law;

4.     An order preliminarily and permanently enjoining the City and all officers, agents, servants, employees, and persons under the authority of the City, from enforcing Glendale Municipal Code section 9.25.040(A);

5.     Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

6.     Any further or alternative relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Respectfully Submitted,

Dated:  October 10, 2022          **MICHEL & ASSOCIATES, P.C.**

                                  */s/ C.D. Michel*
                                  C.D. Michel
                                  Counsel for Plaintiffs California Rifle & Pistol
                                  Association, Incorporated and Second
                                  Amendment Foundation

Dated:  October 10, 2022          **LAW OFFICES OF DON KILMER**

                                  */s/ Don Kilmer*
                                  Don Kilmer
                                  Counsel for Plaintiff Second Amendment
                                  Foundation

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF