MICHAEL J. GARCIA, CITY ATTORNEY
EDWARD B. KANG, PRINCIPAL ASSISTANT CITY ATTORNEY, SBN: 237751
613 E. Broadway, Suite 220
Glendale, CA  91206
Telephone: (818) 548-2080
Facsimile: (818) 547-3402
Email: ekang@glendaleca.gov

Attorneys for Defendants,
CITY OF GLENDALE, GLENDALE CHIEF OF
POLICE CARL POVILAITIS; and GLENDALE
CITY CLERK SUZIE ABAJIAN

# UNITED STATES DISRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; SECOND AMENDMENT FOUNDATION; GUN OWNERS OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF GLENDALE; GLENDALE CHIEF OF POLICE CARL POVILAITIS, in his official capacity; GLENDALE CITY CLERK SUZIE ABAJIAN, in her official capacity; and DOES 1-10, <br><br> Defendants. | Case No.: 2:22-cv-07346-SB-JC <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: December 2, 2022 <br> Time: 8:30 a.m. <br> Courtroom: 6C <br><br> Judge: Hon. Stanley Blumenfeld Jr. |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION AND FACTUAL BACKGROUND ........................................... 1

II.   LEGAL STANDARD FOR MOTION FOR PRELIMINARY INJUNCTION ....................... 3

III.  LEGAL ARGUMENT ........................................................................... 4

    A.   Plaintiffs Lack Standing ......................................................... 4

IV.  THE FACIAL CHALLENGE STANDARD REQUIRES THAT THE ORDINANCE BE FOUND CONSTITUTIONAL ..................................................................... 6

V.   THE ORDINANCE IS CONSTITUTIONAL UNDER *BRUEN* ............................... 8

    A.   Plaintiffs Fail to Meet Their Initial Burden Under *Bruen* ........................ 8

    B.   Historical Analogues Support Upholding the Ordinance ........................... 9

    C.   Plaintiffs' Argument That There Are No Relevant Historical Analogues Because They Are Outliers Is Legally Unsupportable ................................. 16

VI.  PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW ..................... 18

VII. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM ............................. 19

VIII. THE BALANCE OF EQUITIES TIPS HEAVILY IN FAVOR OF THE DEFENDANTS .. 20

IX.  CONCLUSION ............................................................................ 23

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adam v. Barr*
   792 F. App'x 20, 22 (2d Cir. 2019)........................................................... 5

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
   559 F.3d 1046, 1052 (9th Cir. 2009)) ...................................................... 4

*American Freedom Defense Initiative v. Washington Metro. Area Transit Auth.*
   898 F. Supp. 2d 73, 84 (D.D.C. 2012) ..................................................... 20

*Bolton v. Bryant*
   71 F.Supp.3d 802, 819 (Ill. 2013) ........................................................... 21

*Carney v. Adams*
   141 S.Ct. 493, 499 (2020) ....................................................................... 5

*Cheek v. United States*
   498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ......................... 18

*Christopher v. Ramsey County*
    2022 WL 3348276, at *5 (D. Minn. Aug. 12, 2022) .......................... 14

*Clear Channel Outdoor Inc. v. City of Los Angeles*
   340 F.3d 810, 813 (9th Cir. 2003)) ......................................................... 3

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of New York*
   447 U.S. 530, 538 (1980) ....................................................................... 15

*D.C. v. Heller*
   554 U.S. 570, 626-27 & n.26 (2008) ......................................... 2, 9, 14, 16

*Davenport v. Wash. Educ. Ass'n*
   551 U.S. 177, 185 (2007) ....................................................................... 17

*Dickerson v. Napolitano*
   604 F.3d 732, 741-42 (2d Cir. 2010) ...................................................... 7

*Doe v. Snyder*
  28 F.4th 103, 111–12 (9th Cir. 2022) ................................................................ 4

*East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*
  414 F.3d 700, 704 (7th Cir. 2005) ................................................................... 21

*English v. State*
  35 Tex. 473, 478-79 (1871) ............................................................................ 13

*Frey v. Bruen*
  No. 21 Civ. 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ................................. 6, 19

*Friedman v. City of Highland Park*
  784 F.3d 406 (7th Cir. 2015) .......................................................................... 17

*Fyock v. City of Sunnyvale*
  25 F.Supp.3d 1267, 1283 (N.D. Cal. 2014) ........................................................ 21

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*
  788 F.3d 1318, 1324 (11th Cir. 2015) ............................................................. 9, 15

*Goings v. Court Servs. & Offender Supervision Agency for the District of Columbia*
  786 F.Supp.48, 60-- 61 (D.D.C. 2011) ............................................................. 22

*Hecht Co. v. Bowles*
  321 U.S. 321, 329--30 (1944) ......................................................................... 22

*Hill v. State*
  53 Ga. 472, 475 (1874) ................................................................................. 13

*Hollingsworth v. Perry*
  570 U.S. 693, 706-07 (1992) ............................................................................ 5

*Kennedy v. Bremerton School District*
  142 S. Ct. 2407 (2022) ................................................................................... 8

*Knife Rights, Inc. v. Vance*
  802 F.3d 377, 384 (2d Cir. 2015) ...................................................................... 5

iii

*Korte v. Sebelius*
  735 F.3d 654, 665 (7th Cir. 2013)...................................................................... 22

*Lance v. Coffman*
  549 U.S. 437, 439-441 (2007) ............................................................................. 5

*Majhor v. Kempthorne*
  518 F. Supp. 2d 221, 255 (D.D.C. 2007) ........................................................... 20

*Marine Transport Lines, Inc. v. Lehman*
  623 F. Supp. 330, 334--35 (D.D.C. 1985) ......................................................... 22

*Maryland Shall Issue, Inc. v. Hogan*
  971 F.3d 199, 218 (4th Cir. 2020).......................................................................5

*McDonald v. City of Chicago, Ill.*
  561 U.S. 742, 785 (2010) ................................................................................... 17

*National Ass'n of Farmworkers Orgs. v. Marshall*
  628 F.2d 604, 616 (D.C. Cir. 1980) ................................................................... 22

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*
  434 U.S. 1345, 1351 (1977) ............................................................................... 20

*NYSRPA v. Bruen*
  142 S.Ct. 2111, 2132 (2022) .......................................... 1, 7, 8, 9, 10, 14, 16, 23

*Picard v. Magliano*
  42 F.4th 89, 104 (2d Cir. 2022)............................................................................7

*Reuters Ltd. v. United Press Inter'l, Inc.*
  903 F.2d 904, 907 (2d Cir. 1990)....................................................................... 19

*Schneiderman v. Actavis PLC*
  787 F.3d 638, 650 (2d Cir. 2015)....................................................................... 19

*Seegars v. Gonzales*
  396 F.3d 1248, 1255 (D.C. Cir. 2005) .................................................................5

iv

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Sibley v. Watches*
    501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) ................................................. 5

*Siccardi v. State*
    59 N.J. 545, 558 (N.J. 1971) ..................................................................... 21

*Stormans, Inc. v. Selecky*
    586 F.3d 1109, 1127 (9th Cir. 2009).......................................................... 3, 4

*Texaco, Inc. v. Short*
    454 U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) ........................... 18

*Turley v. Giuliani*
    86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).................................................... 19

*United States v. Class*
    930 F.3d 460, 464 (D.C. Cir. 2019) ............................................................ 15

*United States v. Masciandaro*
    648 F. Supp. 2d 779, 790 (E.D. Va. 2009).............................................. 14, 15

*United States v. Oakland Cannabis Buyers' Co-op*
    532 U.S. 483, 496 (2001) ........................................................................... 22

*United States v. Salerno*
    481 U.S. 739, 745 (1987) ............................................................................. 7

*United States v. Smith*
    945 F.3d 729, 736 (2d Cir. 2019)................................................................. 5

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
    455 U.S. 489, 495 (1982) ............................................................................. 7

*Vt. Right to Life Cmte. v. Sorrell*
    758 F.3d 118, 128 (2d Cir. 2014)................................................................. 7

*Warden v. Nickels*
    697 F. Supp. 2d 1221, 1229 (W.D. Wash. 2010).......................................... 15

v

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Wash. State Grange v. Wash. State Republican Party*
   128 S.Ct. 1184, 1190, (2008) ........................................................................ 1, 7

*Weinberger v. Romero-Barcelo*
   456 U.S. 305, 312 (1982) ................................................................................... 22

*Winter v. Natural Res. Def. Council, Inc.*
   129 S. Ct. 365, 374 (2008) ................................................................................ 3, 4

*Yakus v. United States*
   321 U.S. 414, 440--41 (1944) ............................................................................ 22

**Statutes**

Glendale Municipal Code § 9.25.040 .................................................................. 1

**Other Citations**

*Defense Distributed v. Robert Bonta, et al.*
   (U.S. District Court Case No. CV 22-6200-GW-AGRx) ................................... 9

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs California Rifle & Pistol Association, Incorporated, Second Amendment Foundation and Gun Owners of California, Inc., ("Plaintiffs") motion for preliminary injunction seeking to enjoin Defendants City of Glendale ("City"), Chief of Police Carl Povilaitis and City Clerk Suzie Abajian (collectively, "Defendants") from enforcing Glendale Municipal Code § 9.25.040 (the "Ordinance") should be denied for multiple reasons.

First, Plaintiffs lack the requisite standing for a preliminary injunction as Plaintiffs fail to allege any specific threat of enforcement against Plaintiffs based on a violation of the Ordinance. Each of the three nearly identical declarations submitted with Plaintiffs' motion fail to identify even a single instance where one of Plaintiff's members has been cited or even threatened with prosecution under the Ordinance. Thus, the Court must carefully scrutinize Plaintiffs' basis for standing, or risk improperly ruling in the absence of a genuine case or controversy.

Second, although Plaintiffs characterize their challenge to the Ordinance as both a facial and as-applied challenge, the record before the Court clearly demonstrates that Plaintiffs' challenge is not an as-applied challenge as there are no allegations or evidence before the Court that even a single member of Plaintiffs has ever been charged with violating the Ordinance. As such, Plaintiffs challenge is a facial challenge only and thus in order to demonstrate a likelihood of prevailing on the merits, Plaintiffs must establish that the Ordinance is unconstitutional in all applications which it clearly cannot do as government buildings are explicitly sensitive places under *Bruen*. (See, *Wash. State Grange v. Wash. State Republican Party,* 128 S.Ct. 1184, 1190, (2008); *NYSRPA v. Bruen*, 142 S.Ct. 2111, 2132 (2022) (discussing "longstanding" laws forbidding the carrying of firearms in sensitive places such as schools and government buildings).)

Third, Plaintiffs do not even attempt to meet their initial burden under *Bruen* to demonstrate that their planned course of conduct is covered by the plain text of the

Second Amendment. Plaintiffs failure to do so is fatal to their motion and warrants its denial.

Fourth, Plaintiffs cannot refute that laws protecting vulnerable people in "sensitive places" are "presumptively lawful," (*D.C. v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008).) History shows several broad categories of locations in which states prohibited deadly weapons to protect the people, including on government property; locations performing other important public functions, such as educational, literary, or scientific activities; places containing vulnerable people, such as children; and places including fairs, ballrooms, parties, and public exhibitions where large numbers of people would gather in a confined space. Each of the vulnerable locations covered by the Ordinance where Plaintiffs would have the Court find that concealed carry is required falls into one or more of these categories, and is otherwise relevantly similar to historical analogues. The Ordinance, which seeks to prohibit the carrying of firearms on government property, is squarely within and analogous to a myriad of historical statutes prohibiting the carry of firearms in sensitive locations. Plaintiffs seek to completely enjoin the Ordinance on all City property, without making even a cursory attempt to parse the Ordinance to challenge its Constitutional sufficiency. Given that Plaintiffs are making a facial challenge and must show that the Ordinance is invalid in all applications, Plaintiffs fall woefully short of the standard to warrant a preliminary injunction.

Fifth, Plaintiffs' due process claim fails as a matter of law. Longstanding caselaw holds that due process only requires that the City make the Ordinance available to the public, which it has done so as the City's entire municipal code is readily available online. Due process does not require that the City post the Ordinance on every City property as Plaintiffs claim, and Plaintiffs due process rights are therefore not implicated or violated in this instance.

Sixth, Plaintiffs fail to show the requisite irreparable harm. As previously discussed, Plaintiffs' proffered evidence fails to establish even a single member stepping foot within City limits, let alone being prosecuted under the Ordinance. Instead,

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' offer only vague and conclusory allegations about what might happen if a member ever decided to conceal carry on City property. Vague and conclusory allegations are simply insufficient to demonstrate the necessary irreparable harm to warrant a preliminary injunction, especially in a case where as here public safety is squarely implicated.

Finally, the equities clearly favor Defendants. If the Court enjoins the City from enforcing the Ordinance, there would be a serious risk of irreparable harm to public safety. Despite Plaintiffs' claims otherwise, numerous studies confirm that more guns carried in more places by more people result in more crime, violence, and homicide. (See, Request for Judicial Notice ("RJN"), Exs. 26-37.) An injunction would sow confusion among the public, the City, and law enforcement, undermining a critical piece of public safety legislation that is firmly grounded in history and tradition. The Ordinance is legitimate on its face, and can be constitutionally applied. Accordingly, for the foregoing reasons, and as discussed more fully below, Plaintiffs motion should be denied.

## II.    LEGAL STANDARD FOR MOTION FOR PRELIMINARY INJUNCTION

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008), sets forth the applicable standard for issuance of a preliminary injunction in the Ninth Circuit. Before *Winter* was decided, the Ninth Circuit held that to prevail on a motion for preliminary injunction, the plaintiff must demonstrate either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. These two alternatives represented extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to the party seeking the preliminary injunction, the lesser the probability of success that must be shown. (*See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).)

In *Winter*, the Supreme Court definitively refuted the Ninth Circuit's "possibility of irreparable injury" standard, deeming it "too lenient." (*Winter*, 129 S. Ct. at 375.) The

Supreme Court reiterated that the proper standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." (*Winter*, 129 S. Ct. at 375 (emphasis added).) The Supreme Court instructed that "[i]ssuing a preliminary injunction based on only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 375-76.

Applying *Winter*, the Ninth Circuit has since held that, "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." (*Stormans*, 586 F.3d at 1127 (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)).) The proper legal standard for preliminary injunction relief in the Ninth Circuit now requires a party to demonstrate that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. (*Stormans*, 586 F.3d at 1127.)

Additionally, Plaintiffs seek a mandatory injunction which places an even greater burden of proof on Plaintiffs given the severe nature of the requested relief. A mandatory injunction [is] one that goes beyond simply maintaining the status quo and orders the responsible party to take action pending the determination of the case on its merits. Thus, the standard for issuing a mandatory preliminary injunction is high. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" (*Doe v. Snyder*, 28 F.4th 103, 111–12 (9th Cir. 2022).)

## III. LEGAL ARGUMENT

### A. Plaintiffs Lack Standing

As an initial matter, Plaintiffs lack standing in this action for one simple reason, none of the Plaintiffs sufficiently allege that they have suffered an injury-in-fact that is

fairly traceable to the Ordinance. Plaintiffs instead seek an advisory opinion and not resolution of a genuine case or controversy. "[A] plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' 'no matter how sincere' or 'deeply committed a plaintiff is to vindicating that general interest." (*Carney v. Adams*, 141 S.Ct. 493, 499 (2020) (quoting *Lance v. Coffman*, 549 U.S. 437, 439-441 (2007), and *Hollingsworth v. Perry*, 570 U.S. 693, 706-07 (1992)). The relevant "question is whether [Plaintiffs] will suffer a 'personal and individual' injury beyond this generalized grievance—an injury that is concrete, particularized, and imminent rather than 'conjectural or hypothetical." (*Id.* (quoting *Hollingsworth*, 570 U.S. at 705-06) (citation omitted).)

"Although courts generally presume that the government will enforce its laws, 'the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." (*Sibley v. Watches*, 501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) (quoting *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019)).) Rather, where plaintiffs bring a pre-enforcement challenge, they must demonstrate a credible threat of prosecution, which cannot be "imaginary or speculative." (*Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).) No credible threat of prosecution exists where "'plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." (Id.)

Importantly, the threat of enforcement must be with regard to the *specific provision* of law being challenged, since a party lacks Article III standing to contest statutory or regulatory subsections "that are wholly unrelated to the proscription of his conduct." (*United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019).) And, as importantly, against *the specific plaintiff*, not simply an intent to enforce the statute in general. (*Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) (statements that officials are ready to perform duty do not demonstrate imminent harm); *Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (District statement that it would "prosecut[e] all violators of the statute" did not "indicat[e] an especially high probability of enforcement

against" plaintiffs for "engaging in specified conduct"; *Frey v. Bruen*, No. 21 Civ. 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) (no standing to bring pre-enforcement claim against Superintendent where plaintiffs have "not alleged any facts showing that they have been prosecuted in the past or have been threatened with enforcement of any of the statutes they are challenging").)

Here, Plaintiffs do not allege that they have been prosecuted, charged, or even threatened with prosecution because they have brought a firearm or ammunition onto City property in violation of the Ordinance. Indeed, Plaintiffs fail to name a single member that actually resides in Glendale, let alone stepped foot in any locations covered by the Ordinance, despite clearly being able to do so as the fee-shifting provision cited in Plaintiffs' complaint as the reason for not naming an individual plaintiff does not bar an individual from submitting a declaration in connection with this motion. (See, Dckt 1, pgs. 7-8, ¶ 22).

Plaintiffs further fail to allege that the Glendale Police Department have threatened, charged, or prosecuted *a single person* (member or not) with violating the Ordinance, nor can they as the City has submitted competent evidence that it has not once even charged a single person of violating the Ordinance in the entire 10 years of its existence. (See Declaration of Abigail Luczon, ¶ 2). Plaintiffs make no specific allegations that they face any imminent or credible threat of prosecution for violation of the Ordinance, thus Plaintiffs cannot satisfy the requirement that they demonstrate a definite, non-speculative constitutional injury attached to their carrying of firearms on City property in violation of the Ordinance.

Accordingly, Plaintiffs' motion should be denied as Plaintiffs lack the requisite standing.

## IV.   THE FACIAL CHALLENGE STANDARD REQUIRES THAT THE ORDINANCE BE FOUND CONSTITUTIONAL

Although Plaintiffs allege that they are challenging the Ordinance both facially and as-applied, there are no allegations that support Plaintiffs' as-applied challenge as none of

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' members have ever been prosecuted, let alone charged, under the Ordinance. (See, Dckt. 1, p. 23, Prayer, ¶ 2). Thus the proper analysis for Plaintiffs' claims is under the standard for facial challenges.

A party ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [law] would be valid,' *i.e.,* that the law is unconstitutional in all of its applications." (*Wash. State Grange v. Wash. State Republican Party,* 128 S.Ct. 1184, 1190, (2008) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).)

Facial challenges to a state statute's constitutionality are "generally disfavored" for a number of reasons, including because "claims of facial invalidity often rest on speculation," because facial challenges "run contrary to the fundamental principle of judicial restraint," and because "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." (*Dickerson v. Napolitano*, 604 F.3d 732, 741-42 (2d Cir. 2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).) Accordingly, the burden facing a plaintiff is a severe one: "[a] facial [] challenge will succeed only when the challenged law can *never* be validly applied." (*Vt. Right to Life Cmte. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014) (emphasis added) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 495 (1982).)

Here, Plaintiffs cannot meet their burden as Plaintiffs admit that at least some portions of the Ordinance, such as government buildings, are facially valid under *Bruen*. (See, Dckt. 13-1, pg. 9:21-26). Thus, Plaintiffs facial challenge fails as the Ordinance is undoubtedly constitutional in some applications. (See *Wash. State Grange*, 552 U.S. at 450 ("we must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases," particularly when state courts "have had no occasion to construe the law in the context of actual disputes…or to accord the law a limiting construction"); See also, *Picard v. Magliano*, 42 F.4th 89, 104 (2d Cir. 2022)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1   (reversing grant of facial injunction and refusing to "delve into . . . whether a more

2   narrowly drawn statute could surgically identify conduct that may be constitutionally

3   restricted without impinging on other conduct that is constitutionally protected").)

4   **V.    THE ORDINANCE IS CONSTITUTIONAL UNDER *BRUEN***

5       **A.    Plaintiffs Fail to Meet Their Initial Burden Under *Bruen***

6       The Supreme Court in *Bruen* "assume[d] it settled" that certain areas are

7   "'sensitive places' where arms carrying could be prohibited consistent with the Second

8   Amendment." (142 S. Ct. at 2133.) *Bruen*'s framework requires both a textual inquiry

9   and a historical inquiry. A court first must ask whether "the Second Amendment's plain

10   text covers an individual's conduct." (142 S. Ct. at 2129-30.) If so, the court then moves

11   on to ask whether the government has shown that its regulation is "consistent with the

12   Nation's historical tradition of firearm regulation." (*Id.* at 2130. *See generally id.* at 2134-

13   38 (separating application of test into Part III.A (text) and Part III.B (history)).)

14   Plaintiffs thus have the burden on the initial textual inquiry as *Bruen* itself makes it clear,

15   by indicating that a presumption that the Constitution protects a plaintiff's conduct arises

16   *after* ("when" or "because") the textual inquiry is satisfied. (*See* 142 S. Ct. at 2126, 2141

17   n.11.) If the burden were on the government throughout—in what would be an

18   extraordinary departure from ordinary principles of constitutional litigation— the Court

19   would have said that the presumption exists from the outset. Second, placing the initial

20   burden on the plaintiff accords with the Court's approach to other constitutional issues.

21   For example, just a week after *Bruen*, the Court announced in *Kennedy v. Bremerton*

22   *School District*, 142 S. Ct. 2407 (2022), that "[u]nder this Court's precedents, a plaintiff

23   bears certain burdens to demonstrate an infringement of [their] rights under the Free

24   Exercise and Free Speech Clauses. If the plaintiff carries these burdens, the focus then

25   shifts to the defendant to [justify] … its actions[.]" *Id.* at 2421.

26       Plaintiffs make no effort to meet their burden under the first prong of *Bruen* other

27   than to conclusory state "[t]he Ordinance indisputably burdens Second Amendment-

28   protected conduct." Plaintiffs' conclusory assertion does not meet Plaintiffs' burden. For

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

example, in challenging the Ordinance, Plaintiffs must establish that the plain text of the Second Amendment would provide a right to bear concealed weapons on government property despite longstanding caselaw holding otherwise. Because they fail to do so, they are not entitled to injunctive relief.

Here, the Ordinance is markedly different from the laws struck down in *Heller* and *Bruen*—respectively, an unusually "severe" restriction that "totally ban[ned] handgun possession in the home," *Heller*, 554 U.S. at 628-29, and a carry regime that "prevented law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose." (*Bruen*, 142 S. Ct. at 2150.) Accordingly, Plaintiffs cannot rest their textual claim on the simple assertion that they wish to carry handguns in public for self-defense, as the *Bruen* petitioners did. At the very least, Plaintiffs should be required to prove that the Second Amendment's text protects their "proposed course of conduct," *Bruen*, 142 S. Ct. at 2134, with respect to each aspect of the Ordinance. They have failed to do so, and so are not entitled to injunctive relief.

### B.    Historical Analogues Support Upholding the Ordinance

As an initial matter, given that Plaintiffs' challenge the entirety of the Ordinance without analysis as to each sensitive place challenged, as well as the lack of any injury-in-fact specifically tied to any of them, there is no cause to individually assess the constitutionality of every place that may be protected. This is particularly the case given the expedited timeline of this preliminary injunction motion, with less than two weeks for Defendants to prepare opposition papers.  (Cf. *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1324 (11th Cir. 2015) (noting the difficulty of "undertak[ing] this historical inquiry on an accelerated preliminary injunction timeline" and declining to do so because "[t]hese are difficult questions that deserve the full benefit of our adversarial system.").

Indeed, in a similar case, *Defense Distributed v. Robert Bonta, et al.*, (U.S. District Court Case No. CV 22-6200-GW-AGRx), the Honorable George H. Wu in a tentative

ruling on plaintiff's motion for a preliminary injunction, specifically addressed this same issue stating that it was "wishful thinking, at best" to obtain a preliminary injunction on the record presented before him as Defendants could not be expected to undertake or present the type of historical analysis in *Bruen* on just 31 days' notice. Defendants here have had even less time to conduct the historical analysis contemplated in *Bruen*, and coupled with the fact that Plaintiffs seek to invalidate the entire Ordinance without offering any analysis as to each location covered by the Ordinance, and without making any specific, non-conclusory allegations about how and when they intend to carry concealed weapons in such places, or even whether they intend to at all, Plaintiffs have failed to meet their burden to warrant a preliminary injunction.

However, to the extent that the Court intends to consider the constitutionality of specific types of sensitive places, well-settled law and history support the City's banning of firearms as to each sensitive location contemplated by the Ordinance as evidenced by numerous historical statutes relating to this issue. Examples of such statutes include:

- **Delaware**: Del. Const. of 1776, art. XXVIII ("To prevent any violence or force being used at the said elections, no person shall come armed to any of them[.]") (RJN Ex. 1.)
- **Texas**: 1870 Tex. Gen. Laws 63, ch. 46, § 1 (prohibiting weapons at "any church or religious assembly, any school room or other place where persons are assembled for educational, literary or scientific purposes, or into a ball room, social party or other social gathering composed of ladies and gentlemen, or to any election precinct . . . or any other public assembly") (RJN Ex. 2.)
- **Tennessee**: 1869-70 Tenn. Pub. Acts 23-24, ch. 22, § 2 (prohibiting "any qualified voter or other person attending any election in this State, or for any person attending any fair, race course, or other public assembly of the people" to carry arms or dangerous weapons "concealed or otherwise") (RJN Ex. 3.)
- **Georgia**: R. H. Clark, *The Code of the State of Georgia* 818 (1873) (§ 4528) (prohibiting deadly weapons at "any Court of justice, or any election ground, or precinct, or any place of public worship, or any other public gathering in this State") (RJN Ex. 4.)
- **Virginia:** 1877 Va. Acts 305, § 21 (prohibiting "carrying any gun, pistol . . . or other dangerous weapon, to any place of worship while a meeting for religious purposes is being held at such place") (RJN Ex. 5.)

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- **Mississippi**: 1878 Miss. Laws 176, ch. 46, § 4 (punishing "any student of any university, college or school, who shall carry concealed" any "bowie knife, pistol, brass knuckles, slung shot or other deadly weapon") (RJN Ex. 6.)
- **Missouri**: an excerpt from the 1883 Session Laws of Missouri, containing an act concerning "Concealed Weapons." (RJN Ex. 7.)
- **New Mexico**: Chief Justice LeBaron Bradford Prince, *The General Laws of New Mexico: Including All the Unrepealed General Laws from the Promulgation of the "Kearney Code" in 1846, to the End of the Legislative Session of 1880, with Supplement, Including the Session of 1882*, at 313 (prohibiting drawing or using a deadly weapon in "any ball, dance, or other public gathering of the people, or near where any election authorized by law is being held in any part of the Territory, except it be in the lawful defense of himself, his family, or his property") (RJN Ex. 8.)
- **Oklahoma**: 1890 Statutes of Oklahoma (art. 45, § 7) (prohibiting guns at "any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly") (RJN Ex. 9.)
- **Arizona**: 1889 Session Laws of the Fifteenth Legislative Assembly of the Territory of Arizona (§ 3) (prohibiting firearms at any "church or religious assembly, any school room, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind or into a ball room, social party or social gathering, or to any election precinct, on the day or days of any election, where any portion of the people of this territory are collected to vote at any election, or to any other place where people may be assembled to minister, or to perform any other public duty, or to any other public assembly") (RJN Ex. 10.)
- **Montana:** 1903 Mont. Laws 49, § 3 (prohibiting having or carrying concealed firearms at "any church or religious assembly, any school room or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball room, social party, or social gathering, or to any election precinct or any place of registration, on the day or days of any election or days of registration, where any portion of the people of the State are collected to register or vote at any election, or to any other place where people may be assembled to perform any public duty, or at any public assembly") (RJN Ex. 11.)

11

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

- **New York, New York**: *Fourth Annual Report of the Board of Commissioners of the Central Park* 106 (1861) ("All persons are forbidden . . . [t]o carry firearms or to throw stones or other missiles within [Central Park].") (RJN Ex. 12.)
- **Philadelphia, Pennsylvania**: *Acts of Assembly Relating to Fairmount Park* (1869) ("No persons shall carry fire-arms, or shoot birds in the Park, or within fifty yards thereof, or throw stones or missiles therein.") (RJN Ex. 13.)
- **St. Louis, Missouri**: Michael John Sullivan, *The Revised Ordinance of the City of St. Louis, Together with the Constitution of the United States, Constitution of the State of Missouri, the Scheme for the Separation of the Governments of the City and County of St. Louis, the Charter of the City, and a Digest of the Laws Applicable to the City* 635 (1881) (§ 3) ("No person shall . . . use or have in his possession ready for use in any street, alley, walk or park of the city of St. Louis" any device that discharges a "fragment, bolt, arrow, pellet, or other missile") (RJN Ex. 14.)
- **Idaho in 1889**: prohibiting "any person," other than specified law enforcement officers, to carry "deadly weapons, within the limits or confines of any city, town or village or in any public assembly of the State of Idaho." Penal Code of the State of Idaho § 4781 (1901) (reprinting 1889 statute) (RJN Ex. 15.)
- **Saint Paul, Minnesota**: *Annual Reports of the City Officers and City Boards of the City of Saint Paul* 689 (1889) ("No person shall carry firearms or shoot birds in any Park or within fifty yards thereof, or throw stones or other missiles therein.") (RJN Ex. 16.)
- **Chicago, Illinois**: *Amendments to the Revised Municipal Code of Chicago of 1905 and New General Ordinances* 40 (1905) ("All persons are forbidden to carry firearms or to throw stones or other missiles within any of the Parks, Public Play Grounds or Bathing Beaches of the City") (RJN Ex. 17.)
- **Los Angeles, CA:** 1906 (in 1922 publication) ("That the rules and regulations hereinafter prescribed shall govern the public parks of the City of Los Angeles. … That within the limits of any of said parks, it shall be unlawful for any person or persons to do any of the acts hereinafter specified, to-wit: … To carry … any fire arms, … or air gun or slingshot.") (RJN Ex. 18.)
- **Phoenixville, Pennsylvania**: *A Digest of the Ordinances of Town Council of the Borough of Phoenixville* 135 (1906) ("No person shall carry fire-arms or shoot birds or throw stones or other missiles therein [Reeves Park].") (RJN Ex. 19.)
- **Oakland, California**: *General Municipal Ordinances of the City of Oakland, Cal.*, Addendum at 15 (1909) ("No person shall carry firearms, or shoot birds or

12

throw stones or other miss[i]les within the boundaries of the parks controlled by the Park Commission.") (RJN Ex. 20.)

- **Staunton, Virginia**: *The Code of the City of Staunton, Virginia* 115 (1910) ("All persons are forbidden . . . to carry firearms, or to throw stones or other missiles within [the park.]") (RJN Ex. 21.)
- **New York City:** *Ordinances, Rules and Regulations of the Department of Parks of the City of New York* 7 (1916) ("No person shall, in any park . . . [f]ire or carry any firearm[.]") (RJN Ex. 22.)
- **Birmingham, Alabama**: *The Code of City of Birmingham, Alabama* 662 (1917) ("[N]o person shall carry firearms or throw stones or missiles within any of such public parks[.]") (RJN Ex. 23.)
- **Federal:** 1 Fed. Reg. 668, 674 (June 27, 1936) (prohibiting firearms in national parks and monuments "except upon written permission of the superintendent or custodian") (RJN Ex. 24.)
- **Federal**: Individual national parks adopted firearms prohibitions starting in the late nineteenth century. *See generally* "Firearms Regulations in the National Parks, 1897–1936" (May 13, 2008) (RJN Ex. 25.)

Each of these statutes covers a sweep of locations that, considered in the context of the place and time, is comparable to or broader than the Ordinance and evidences a long-standing history of barring firearms from similar places covered by the Ordinance. (See *English v. State*, 35 Tex. 473, 478-79 (1871) ("We confess it appears to us little short of ridiculous, that any one should claim the right to carry upon his person any of the mischievous devices inhibited by the statute, into a peaceable public assembly, as, for instance into a church, a lecture room, a ball room, or any other place where ladies and gentlemen are congregated together."); *Hill v. State* 53 Ga. 472, 475 (1874) ("The practice of carrying arms at courts, elections and places of worship, etc. is a thing so improper in itself, so shocking to all sense of propriety, so wholly useless and full of evil, that it would be strange if the framers of the constitution have used words broad enough to give it a constitutional guarantee.").

History also clearly supports prohibitions on firearms in private places where people gather in large crowds and confined spaces. (See, e.g., 1869-70 Tenn. Pub. Acts 23, RJN Ex. 3 ("fair, race course, or other public assembly of the people"); 1870 Tex.

Gen. Laws 63, RJN Ex. 2 ("a ball room, social party or other social gathering composed of ladies and gentlemen"); 1890 Okla. Stat. 495-96, RJN Ex. 9 ("any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering"); 1889 Ariz. Sess. Laws 17, RJN Ex. 10 (any "place where persons are assembled for amusement . . , or into any circus, show or public exhibition of any kind, or into a ball room, social party or social gathering").) In many cases the nature of such places may render armed self-defense impossible or impracticable – it is not possible to safely defend oneself with a gun in a crowded theater or stadium. Other post-*Heller* federal courts have recognized such places as sensitive. (See, e.g., *Christopher v. Ramsey County*, 2022 WL 3348276, at *5 (D. Minn. Aug. 12, 2022) ("During the State Fair, the Fairgrounds are a sensitive location with thousands of people and children present in often crowded conditions."); *Masciandaro*, 648 F. Supp. 2d at 790 (sensitive places include "public properties where large numbers of people, often strangers (and including children) congregate for recreational, educational, and expressive activities."). To be sure, this category of sensitive places is not so expansive as to cover "all places of public congregation that are not isolated from law enforcement," *Bruen*, 142 S.Ct. 2134, but a clear-eyed reading of history demonstrates that many places where crowds gather were in fact understood as places where access to deadly weapons could be restricted to protect a vulnerable public, including the City's open spaces, parks and parking lots.

There are also multiple examples of municipal statutes entirely banning the carrying of firearms within them. (See, e.g., Fourth Annual Report of the Board of Commissioners of the Central Park (Jan. 1861), RJN Ex. 12 ("All persons are forbidden . . . [t]o carry firearms"); First Annual Report of the Commissioners of Fairmount Park (Philadelphia), Supplement § 21(II) (1869), RJN Ex. 13, (excerpting Pennsylvania state statute requiring that "[n]o persons shall carry fire-arms, or shoot birds in the Park, or within fifty yards thereof"); Rules and Regulations of the Public Parks and Grounds of the City of Saint Paul (1888), RJN Ex. 16 ("No person shall carry firearms or shoot birds in any Park or within fifty yards thereof."); see also *Warden v. Nickels*, 697 F. Supp. 2d

1221, 1229 (W.D. Wash. 2010) ("a . . . park where children and youth recreate is a 'sensitive' place where it is permissible to ban possession of firearms."); *United States v. Masciandaro*, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) ("Although Heller does not define 'sensitive places,' the examples given—schools and government buildings—plainly suggest that motor vehicles on National Park land fall within any sensible definition of a 'sensitive place.'"), aff'd on other grounds, 638 F.3d 458 (4th Cir. 2011).)

Additionally, the City's sensitive locations should be determined valid because "the government as proprietor" may validly exclude weapons from its own facilities. (*United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019) (upholding ban on guns in parking lot near U.S. Capitol under sensitive places doctrine because "the government—like private property owners—has the power to regulate conduct on its property."). That is one undisputed justification for a sensitive place, since the government indeed may bar from its facilities even protected activity "that would disrupt the legitimate governmental purpose for which the property has been dedicated." (*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 538 (1980).)

Contrary to the Plaintiffs' assertion, offered without any historical analysis or citation to legal authority, PI Mem, pgs. 12-13, the government's ability to prohibit guns on its own property is not limited to buildings, and not limited to areas otherwise closed to the public or subject to more stringent security measures. (See *Class*, 930 F.3d at 465 (noting that "[m]any 'schools' and 'government buildings,' – the paradigmatic 'sensitive places' identified in Heller – are open to the public, . . . yet the Heller opinion leaves intact bans on firearm possession in those places."); see, e.g., *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*, 212 F. Supp. 3d 1348, 1362 (N.D. Ga. 2016) (ban on guns in recreational area owned by Army Corps, even though the "property is more expansive than just a 'building' . . . falls squarely into the existing 'laws forbidding the carrying of firearms in sensitive places' referenced in Heller.").) Thus, Plaintiffs' distinction is both historically unsupported and wrong: locations open to the public (whether in the 1800s or today) can be among the most sensitive.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Finally, Plaintiffs' argument regarding the Ordinance's purported prohibition on private property is misguided and displays a misunderstanding of the Ordinance itself. The Ordinance states that it is applicable to any City owned property in the possession of private individuals who have contracted with the City to perform a public purpose. There are only four (4) such properties within the City: (1) the parking lots at the Glendale Galleria; (2) the open space (i.e., park) in the middle of the Americana; (3) the parking lot at the Glendale Fashion Center; and (4) an open space located at the corner of Broadway and W. Glenoaks Blvd. (See, Declaration of Mark Berry, ¶ 2.) Thus, Plaintiffs' arguments regarding the City banning firearms on private property is entirely without merit as the Ordinance only bans firearms from **City** owned property that is currently under the control of third parties.

Accordingly, given the numerous historical analogues supporting the Ordinance, the Court should deny Plaintiffs' motion.

## C.      Plaintiffs' Argument That There Are No Relevant Historical Analogues Because They Are Outliers Is Legally Unsupportable

Plaintiff's argue, without much historical context, that there are no relevant historical examples because they did not cover the same conduct at issue here, or are "outliers" insufficient to establish a historical tradition under *Bruen*. However, given the sheer number of historical analogues listed above, Plaintiffs' conclusory and unsupported argument should be disregarded out of hand. But to the extent this Court chooses to address the issue here, the law clearly establishes that that a small number of laws can establish a tradition in light of *Bruen*'s discussion of the historical laws justifying sensitive places.

Specifically, *Bruen* repeated *Heller*'s identification of "schools and government buildings" as sensitive places, 142 S. Ct. at 2133 (quoting *Heller*, 554 U.S. at 626), and then recognized that three additional, more specific locations—legislative assemblies, polling places, and courthouses—were also "'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." (*Id.*) But the sources the Court

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

cited for the historical record justifying restrictions in those three locations identified *only two laws* naming legislative assemblies and *two laws* naming courthouses. (*See* Kopel & Greenlee, 13 Charleston L. Rev. at 235, 246; Br. for Indep. Inst. at 11-12.) Clearly then, a small number of laws can be sufficient to establish this nation's tradition of firearm regulation, at least so long as there is not overwhelming affirmative evidence of an enduring tradition to the contrary.

Determining that a limited number of state laws can demonstrate a "public understanding" of a limitation on the Second Amendment right is consistent with longstanding principles that entitle a City to effectuate the policy choice of its citizens within constitutional bounds. Local conditions matter. Just as municipalities today may (or may choose not to) "experiment[] with reasonable firearms regulations," *McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 785 (2010) (plurality opinion), municipalities historically may have chosen not to regulate certain weapons, people, or conduct, not because the public understood the right to keep and bear arms to prevent such regulations, but because of democratically supported policy choices. As Judge Easterbrook explained in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity," and "[t]he central role of representative democracy is no less part of the Constitution than is the Second Amendment." (*Id.* at 412.) And the fact that government agencies have latitude to experiment with regulations that meet their unique needs means that such agencies historically may well have chosen not to regulate to the limits of constitutional permissibility. (*Cf., e.g., Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007) ("The constitutional floor [by which the First Amendment restricts public-sector] unions' collection and spending of agency fees is not also a constitutional ceiling for state-imposed restrictions.").)

Accordingly, while state laws restricting firearms demonstrate that the people of those states understood the right to keep and bear arms to permit such restrictions, the

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1    absence of such laws in other states does not warrant any inference that their citizens

2    considered such restrictions unconstitutional.

3    **VI.    PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW**

4              Plaintiffs' claim that their due process rights have been violated because the City

5    does not conspicuously post the Ordinance on every City property where the Ordinance is

6    in effect is without merit as a matter of law.

7              The Due Process Clause requires governmental bodies to make laws available to

8    the public, not to ensure that everyone knows all rules. "Generally, a legislature need do

9    nothing more than enact and publish the law, and afford the citizenry a reasonable

10   opportunity to familiarize itself with its terms and to comply." (*Texaco, Inc. v. Short*, 454

11   U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).) The maxim that ignorance of the

12   law is no excuse sums up this perspective. People must learn about their legal obligations,

13   and failure to do so does not provide a defense to a law's enforcement. Some statutes

14   require prosecutors to show that a person knows about the rule, see, e.g., *Cheek v. United*

15   *States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), but that is a legislative

16   exception to *Texaco*'s norm, not a constitutional command. This maxim should be even

17   more poignant and applicable where as here, Plaintiffs seek to carry firearms on City

18   property and should proactively seek out whatever laws are applicable to them in their

19   claimed efforts to be responsible gun owners.

20             As required for due process, the City's entire municipal code is readily available at

21   the following website: https://library.qcode.us/lib/glendale_ca/pub/municipal_code. Any

22   member of the public can use a search engine and type in "Glendale Municipal Code"

23   and the first link will be the aforementioned website. Once on the website, a member of

24   the public can search the Municipal Code by using key terms or phrases, such as

25   "firearms" and/or "ammunition", and every single municipal code section mentioning

26   those key terms, including the Ordinance, will be displayed. Thus, given the Due Process

27   Clause only requires the City make its laws available to the public, which it clearly has

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

done so in this instance, Plaintiffs' due process argument fails as a matter of law and does not support the issuance of a preliminary injunction.

## VII.   PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM

Plaintiffs' allegations of irreparable harm are entirely speculative and insufficient to warrant a preliminary injunction. Although Plaintiffs broadly allege that their constitutional rights have been violated, and thus they will suffer irreparable injury, their alleged injuries are largely speculative and fail to meet the necessary standard for an issuance of a preliminary injunction. "Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." (*Reuters Ltd. v. United Press Inter'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990) (citation omitted).) Thus, when a plaintiff alleges that they will suffer irreparable harm in the form of constitutional injury, the irreparable harm inquiry turns on the likelihood that the plaintiff will succeed on their constitutional claims. (See, e.g., *Frey*, 2022 WL 522478, at *9 ("'Because the violation of a constitutional right is the irreparable harm asserted, the two prongs of the preliminary injunction threshold merge into one' and 'in order to show irreparable injury, plaintiff must show a likelihood of success on the merits.'")

Thus, to demonstrate irreparable harm, Plaintiffs must demonstrate that they personally will suffer an imminent violation of their constitutional rights which they have failed to do so here. For all of the reasons previously discussed in Section III(A) above regarding standing, Plaintiffs cannot demonstrate that an irreparable injury is imminent.

Because Plaintiffs are not likely to succeed on the merits of their claims, they have not made a "strong showing" of irreparable harm" required to obtain a mandatory injunction against a validly enacted statute. (*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).)

# VIII.   THE BALANCE OF EQUITIES TIPS HEAVILY IN FAVOR OF THE DEFENDANTS

By their motion, plaintiffs seek to enjoin the implementation of a law of substantial local importance. Indeed, when considering the harm to the parties in determining the balance of equities, the Court must not only consider the parties to the case, but also the general public. (*See Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 255 (D.D.C. 2007) (court must consider "the extent to which a preliminary injunction would 'substantially injure other parties.'") Enjoining the Ordinance would clearly have a negative impact on thousands of City residents and visitors, in light of the (at best) uncertain public impact of allowing untold numbers of concealed handguns to be carried on City property.

Contrary to plaintiffs' arguments, the Court should not simply ignore the interests of the City and its citizens because Plaintiffs have invoked the Constitution. (*See, e.g., American Freedom Defense Initiative v. Washington Metro. Area Transit Auth.,* 898 F. Supp. 2d 73, 84 (D.D.C. 2012) ("The Court must balance Plaintiffs' First Amendment right with [defendant's] concern for a possible threat to public safety.").)

An injunction now would harm the City and its citizens, by injecting massive uncertainty into an important public-safety measure. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." (*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).) Granting this preliminary injunctive relief would irrevocably change public spaces in the City.

Given the foregoing, the balance of equities tips decidedly in favor of the City. The risk of a gun-related tragedy--accidental or deliberate--outweighs Plaintiffs' speculative fears about any imminent need to defend themselves from public attack on City property. But even if being permitted to conceal carry on City property would afford some incremental measure of self-protection for a particular applicant, it would also increase the risk of that applicant being involved in "the known and serious dangers of misuse and

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

accidental use." (*Siccardi v. State*, 59 N.J. 545, 558 (N.J. 1971).) And, of particular importance here, when a handgun is carried in public, the risks and dangers of misuse and accidents are borne by everyone, not just the holder. As the Supreme Court of New Jersey recognized long ago: "Surely such widespread handgun possession in the streets, somewhat reminiscent of frontier days, would not be at all in the public interest." (*Id.*; See also, RJN, Exs. 26-37.)

Plaintiffs allege that they have an absolute right to carry concealed weapons in public for self-defense of themselves and their families, and that irreparable harm will result if they are not allowed to do so. "Those are important interests, but there is no record evidence of imminent or upcoming threats, and 'speculative injuries do not justify th[e] extraordinary remedy' of a preliminary injunction." (*Bolton v. Bryant*, 71 F.Supp.3d 802, 819 (Ill. 2013) (quoting *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005).) Identically here, Plaintiffs have "not provided any information on these potential threats that would tip the balance of harms in [their] favor." (*Id.*) These speculative harms, while not insubstantial, are simply not enough to overcome the potential harm to public safety that would arise should a preliminary injunction be erroneously granted. Whereas on the balance of the hardships the court examined only hardship to Plaintiffs, because constitutional rights are at issue, any infringement on the Second Amendment naturally harms the public.

Likewise, because gun violence threatens the public at large, the court balances the public's interest in preserving its constitutional rights against the public's interest in preventing gun violence. (*Fyock v. City of Sunnyvale*, 25 F.Supp.3d 1267, 1283 (N.D. Cal. 2014).)

Here, it is the interests of Plaintiffs and its members, not the interests of the public, which drives this lawsuit. Their asserted desire for self-defense by carrying concealed weapons on City property must be balanced against the rights of the public. While for "several hundred years" courts sitting in equity have had the discretion to weigh the public interest in granting or denying injunctive relief, such courts "should pay particular

regard for the public consequences in employing the extraordinary remedy of injunction." (*United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329--30 (1944), and *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). *See also Taylor*, 549 F.Supp.2d at 77 ("The public interest is a uniquely important consideration in evaluating a request for [emergency relief].") (quoting *National Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980)). "The aim is to minimize the costs of a wrong decision." (*Bolton*, 2014 WL 5350465 at *9 (quoting *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013)).)

Moreover, "when an injunction would 'adversely affect a public interest . . . even temporarily . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." (*Goings v. Court Servs. & Offender Supervision Agency for the District of Columbia*, 786 F.Supp.48, 60-- 61 (D.D.C. 2011) (quoting *Yakus v. United States*, 321 U.S. 414, 440--41 (1944).) "The Court may thus deny injunctive relief, even when private rights are implicated, because courts in equity 'may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" (*Id*. at 61 (quoting *Yakus*, 321 U.S. at 441); *See also Marine Transport Lines, Inc. v. Lehman*, 623 F. Supp. 330, 334--35 (D.D.C. 1985) ("The award of such relief is not a matter of right, even though the petitioner claims and may incur irreparable injury.").)

In this case, the public consequences of granting an injunction would be significant; potentially thousands of additional concealed weapons on City property will substantially increase the risk of mishaps, at the incremental gain of personal safety in the event that one of Plaintiffs' members visit one of the City's properties despite not having alleged or demonstrated through competent evidence that any of its members have ever done so or intend to do so in the future. The number of additional handguns would also increase the risk of accidental discharges, potential misunderstandings, or other public escalations turning fatal.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Finally, as previously stated in Section V(b), Defendants have had only 13 days to oppose this motion and attempt to scour the historical record for analogues to support upholding the Ordinance. 13 days is simply not enough time to properly present an accurate and full record to the Court on a matter of significant public importance. It would be inherently inequitable to grant a preliminary injunction enjoining enforcement of a vital public safety measure without the benefit of the most complete record possible on this issue, especially when *Bruen* expressly requires a thorough examination of historical analogues from the 18th and 19th centuries to determine the constitutional validity of the Ordinance. The equities thus favor Defendants in this regard as well, and given the substantial public interests involved, the Court should determine that the balance of equities tips heavily in favor of Defendants and deny Plaintiffs' motion in its entirety.

## IX.   CONCLUSION

Plaintiffs' motion must be denied for multiple reasons. Plaintiffs lack the requisite standing; cannot demonstrate that the Ordinance is unconstitutional in all instances as required for a facial challenge; cannot show a likelihood of success on the merits; cannot demonstrate irreparable harm as there is no immediate threat of prosecution under the ordinance; and cannot credibly allege that the public interest or equities tip in their favor.

Accordingly, for all the foregoing reasons, Defendants respectfully request this Court deny Plaintiffs' motion in its entirety.

DATED:   November 3, 2022          MICHAEL J. GARCIA, CITY ATTORNEY

By: _____

        EDWARD B. KANG
        Attorneys for Defendants

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION