C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
Alexander A. Frank – SBN 311718
afrank@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile:   (562) 216-4445
www.michellawyers.com

Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; and GUN OWNERS OF CALIFORNIA, INC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF GLENDALE; GLENDALE CHIEF OF POLICE CARL POVILAITIS, in his official capacity; GLENDALE CITY CLERK SUZIE ABAJIAN, in her official capacity; and DOES 1-10, <br><br> Defendants. | **CASE NO: 2:22-cv-07346-SB-JC** <br><br> **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> **Hearing Date: December 2, 2022** <br> **Hearing Time: 8:30 AM** <br> **Courtroom: 6C** <br> **Judge: Hon. Stanley Blumenfeld Jr.** |

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ......................................................................................i

TABLE OF AUTHORITIES ...............................................................................ii

1.   PLAINTIFFS HAVE STANDING ..........................................................1

2.   THE FACIAL CHALLENGE STANDARD ...........................................3

3.   APPLYING *BRUEN*.................................................................................5

    A.   *Bruen's* Sensitive Areas Carve-out is Not Exempt from the *Bruen*
       Analysis ............................................................................................5

    B.   The City's Complaints About Lack of Time to Prepare its
       Opposition are   Unavailing ............................................................8

    C.   The City Cites Very Few Relevant Analogues ...............................9

    D.   The Few Valid Analogues That Are Cited Are Not Sufficient to
       Support the Ordinance's Restrictions............................................10

       i.   Crowded places. ..................................................................11

       ii.   Parks. ...................................................................................12

       iii.   Government-owned property generally. ...............................13

       iv.   The City cites no analogues at all to support the remainder
         of its property.......................................................................13

4.   THE CITY IMPROPERLY INVITES THIS COURT TO DEFY
    BRUEN BY ENGAGING IN AN INTEREST-BALANCING
    ANALYSIS................................................................................................14

5.   CONCLUSION ........................................................................................15

1

2

3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. Hochul*,
    No. 1:22-CV-0986, 2022 U.S. Dist. LEXIS 182965 (N.D.N.Y. Oct. 6, 2022) .... 10, 15, 16, 17

*Antonyuk v. Hochul*,
    No. 1:22-CV-0986, 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022) ............. *passim*

*Aptheker v. Secretary of State*,
    378 U.S. 500 (1964) ........................................................................................................ 9

*B&L Prods. v. Newsom*,
    S.D. Cal. Case No. 21-cv-01718 ...................................................................................... 5

*Babbitt v. UFW Nat'l Union*,
    442 U.S. 289 (1979) ........................................................................................................ 5

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) ........................................................................................................ 9

*Cal. Trucking Ass'n v. Bonta*,
    996 F.3d 644 (9th Cir. 2020) ........................................................................................... 6

*Christopher v. Ramsey Cty.*,
    No. 21-2292, 2022 U.S. Dist. LEXIS 144159 (D. Minn. Aug. 12, 2022) ............................ 14

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ........................................................................................................ 8

*City of Chicago v. Morales*,
    527 U.S. 41 (1999) ...................................................................................................... 8, 9

*Columbia Hous. & Redevelopment Corp. v. Braden*,
    No. M2021-00329-COA-R3-CV, 2022 Tenn. App. LEXIS 395 (Ct. App. Oct.
    13, 2022) ......................................................................................................................... 11

*Duncan v. Bonta*,
    S.D. Cal. Case No. 17-cv-1017 ....................................................................................... 5

*English v. State*,
    35 Tex. 473 (1871) .................................................................................................... 13, 14

*Friends of the Earth v. Laidlaw Environmental Services*,
    528 U.S. 167 (2008) ........................................................................................................ 7

*Hardaway v. Nigrelli*,
    No. 22-CV-771, 2022 U.S. Dist. LEXIS 200813 (W.D.N.Y. Nov. 3, 2022) ................. *passim*

ii

*Hill v. State,*
    53 Ga. 472 (1874) ................................................................................. 13, 14

*Hotel & Motel Ass'n of Oakland v. City of Oakland,*
    344 F.3d 959 (9th Cir. 2003)................................................................. 8

*Junior Sports Magazines, Inc. v. Rob Bonta,*
    C.D. Cal. Case No. 2:22-cv-05663 ...................................................... 5

*Kolender v. Lawson,*
    461 U.S. 352 (1982)............................................................................. 9

*LSO, Ltd. v. Stroh,*
    205 F.3d 1146 (9th Cir. 2000)............................................................. 6

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012)............................................................... 18

*Morris v. United States Army Corps of Eng'rs,*
    60 F. Supp. 3d 1120 (D. Idaho 2014) .................................................. 11

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. ___, 142 S. Ct. 2111 (2022) ......................................*passim*

*Nat'l Family Farm Coal. v. United States EPA,*
    966 F.3d 893 (9th Cir. 2020)............................................................... 5

*Peruta v. California,*
    137 S. Ct. 1995 (2017) (Thomas, J., dissenting from denial of certiorari) ........................... 12

*Preminger v. Principi,*
    422 F.3d 815 (9th Cir. 2005)............................................................... 19

*Rhode v. Bonta,*
    S.D. Cal. Case No. 3:18-cv-00802 ...................................................... 5

*State v. Buzzard,*
    4 Ark. 18 (1842)................................................................................. 14

*Steffel v. Thompson,*
    415 U.S. 452 (1974)............................................................................. 5

*Stenberg v. Carhart,*
    530 U.S. 914 (2000)............................................................................. 9

*Susan B. Anthony List v. Driehaus,*
    572 U.S. 149 (2014)............................................................................. 7

*United States v. Kaczynski,*
    551 F.3d 1120 (2009)........................................................................... 8

iii

*United States v. Salerno,*
   481 U.S. 739 (1987) ................................................................................... 7, 8, 9

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ........................................................................................ 9

*Young v. Hawaii,*
   896 F.3d 1044 (9th Cir. 2018), *rev'd en banc,* 992 F.3d 765 (9th Cir. 2021),
   *rev'd,* 142 S. Ct. 2895 (2022) ....................................................................... 14

**Statutes**

16 U.S.C. § 1a-7b(b) ......................................................................................... 14

Glendale Cal. Municipal Code § 9.25.040(A) ................................................. 19

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
2:22-cv-07346-SB-JC

## 1.      PLAINTIFFS HAVE STANDING

Plaintiffs are gun rights associations who frequently challenge firearms laws on their members' behalf.[1] They undoubtedly have associational standing here. *Nat'l Family Farm Coal. v. United States EPA*, 966 F.3d 893, 908 (9th Cir. 2020). Given this, Plaintiffs will instead focus on the injury-in-fact that the City disputes exists, as that purportedly is the "one simple reason" Plaintiffs lack standing. Opp. at 4-5.

The City's argument on injury-in-fact is contradictory. The City characterizes the Ordinance as a forgotten relic, and asserts that it has never enforced it. Opp. at 6. Yet the City later argues that the Ordinance must not be preliminarily enjoined because it is a "law of substantial local importance" and enjoining it would "clearly have a negative impact on thousands of City residents and visitors, in light of the (at best) uncertain public impact of allowing untold numbers of concealed handguns to be carried on City property." Opp. at 20.

The City effectively admits the Ordinance is chilling the constitutional right to lawful carry, and prefers that effect remain undisturbed. This chilling effect impacts Plaintiffs' membership, and clearly poses a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," notwithstanding the historic under-enforcement. *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979). Indeed, Plaintiffs' members do not need to risk liability before suing when the Ordinance deters them from exercising their constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights."). "Where, as

---

[1] E.g., Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA") is a Plaintiff in *Rhode v. Bonta*, S.D. Cal. Case No. 3:18-cv-00802; *Duncan v. Bonta*, S.D. Cal. Case No. 17-cv-1017; *B&L Prods. v. Newsom*, S.D. Cal. Case No. 21-cv-01718; *Junior Sports Magazines, Inc. v. Rob Bonta*, C.D. Cal. Case No. 2:22-cv-05663. A non-comprehensive listing of other active CRPA cases can be found here: <https://crpa.org/programs/litigation-program/> (as of October 5, 2022).

here, plaintiffs challenge a law not yet been applied to them, they need not show that they are subject to an actual arrest, prosecution, or other enforcement action as a prerequisite to challenging the law." *Antonyuk v. Hochul*, No. 1:22-CV-0986, 2022 U.S. Dist. LEXIS 201944, at *19 (N.D.N.Y. Nov. 7, 2022) ("*Antonyuk II*").

The City's refusal to disavow the Ordinance is evidence of Plaintiffs' standing. "[T]he state's refusal to disavow enforcement of AB-5 against motor carriers during this litigation is strong evidence that the state intends to enforce the law and that CTA's members face a credible threat." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2020); see also *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–56 (9th Cir. 2000) (holding that "the Government's failure to disavow application of the challenged provision [is] a factor in favor of a finding of standing"). Not only will the City not disavow the Ordinance, its grave concerns about the consequences of the Ordinance being struck sends an unmistakable message: the City will enforce it if anyone is caught violating it. Opp. at 6. In this context, "the denial of [Plaintiffs'] right to armed self-defense in public under the Second Amendment caused through a credible threat of enforcement of this regulation" is an injury in fact. *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *40.

Many of Plaintiffs' members live in Glendale or travel to the City. Two of Plaintiffs' attorneys are members of CRPA who have concealed carry weapon ("CCW") permits, and both would carry self-defense during trips to Glendale but for the Ordinance. *See* Declaration of Joshua Robert Dale in Support of Reply Brief, *passim*, and Declaration of Konstadinos T. Moros in Support of Reply Brief, *passim*.

Plaintiffs could amend their complaint to add individual Plaintiffs. But how would that remedy the purported lack of harm defect that the City is arguing? An un-prosecuted individual plaintiff is in the same position as an un-prosecuted member of an associational plaintiff; harmed by an Ordinance that the City speciously claims that it doesn't enforce, but which it also claims is vital to public

safety.  *See Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 189-90 (2008) (voluntary cessation of constitutionally prohibited behavior does not obviate injury to plaintiff when the behavior can be resumed at some future date).

## 2.    THE FACIAL CHALLENGE STANDARD

The City argues that none of the individuals whom Plaintiffs represent in an associational capacity "have ever been prosecuted, let alone charged, under the Ordinance." Opp. at 7. But it is well settled that Plaintiffs do not need to be prosecuted to bring a pre-enforcement action. *See Susan B. Anthony List v. Driehaus*, 572 U.S. 149, 159 (2014). Indeed, all Plaintiffs need to do to bring this action is satisfy the *Driehaus* factors: i.e., (1) allege an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) "but proscribed by a statute," and (3) "there must be a credible threat of prosecution" under the statute. *Id.* Here, all *Driehaus* factors are met. Plaintiffs' members—their counsel included—would conceal carry in Glendale in places proscribed by the Ordinance, and the City argues that its Ordinance is very important and therefore presumptively very likely to be enforced. Opp. at 6.

Next, the City argues that Plaintiffs' facial challenge cannot satisfy the purported "no set of circumstances" standard under *United States v. Salerno*, 481 U.S. 739, 745 (1987). The City argues that because the ordinance preserves the right to carry in at least some public places, the facial challenge fails.

*Bruen* squarely rejected the notion that most public areas are genuine "sensitive" places, and unambiguously held that a City cannot deem any given public space a "no-go" sensitive area without showing a genuinely well-subscribed historically analogous regulatory tradition. Yet here, the City essentially argues that because the ordinance prohibits concealed carry in some public areas that may be truly sensitive, the fact that the ordinance bans carry in other public areas is irrelevant.

Not so. That some prohibited public areas listed in the Ordinance *might* be

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.

true sensitive areas does not get the City an exemption from *Bruen's* application to those areas or any others. Because the Ordinance prohibits carry in a significant number of public areas, it is facially suspect in light of *Bruen's* holding that people have a right to be armed in public. *Bruen* is very clear that the government cannot overrule that right by declaring spaces "sensitive" by fiat, without recourse. Any law that facially does that—like the Ordinance—is therefore vulnerable to a *facial* challenge, regardless of what remainder of the law might not be constitutionally suspect. "[A] court will sever a statute when a portion of it is found unconstitutional and that portion can be excised from the statue without altering the statute's intended purpose." *United States v. Kaczynski*, 551 F.3d 1120, 1125 (2009) (citing *United States v. Jackson*, 390 U.S. 570, 585-90).

Another weakness with the City's reliance on *Salerno* is that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Here, the breadth of the remedy includes declaring the portions of the Ordinance that are facially suspect unconstitutional, and letting any constitutional portions stand. In any event, Plaintiffs have satisfied their burden in this preliminary injunction context to show that the Ordinance is at least partially unconstitutional under *Bruen*.

"[T]he Court's most recent discussion of facial vagueness challenges has cast some doubt on [*Salerno's*] "no set of circumstances" requirement." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003) (citing *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999)). Indeed, a plurality of Justices in *Morales* "stated that the *Salerno* formulation was dictum." *Id.* "To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of

1  this Court, including *Salerno* itself. . . ." *Morales,* 527 U.S. 41 at 55 n.22 (Stevens,

2  J., plurality opinion) And in *Kolender v. Lawson*, 461 U.S. 352, 361-62 (1982) the

3  court upheld a facial vagueness challenge to a law implicating constitutionally

4  protected conduct outside the First Amendment in the face of accepted evidence

5  that the law could be validly applied.

6       Last, under the "overbreadth" theory of facial challenge, a plaintiff does not

7  need to establish that a challenged law has no possible constitutional application,

8  and only needs to show that "a 'substantial number' of its applications are

9  unconstitutional, 'judged in relation to [its] plainly legitimate sweep.' " *Wash. State*

10  *Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting

11  *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)). The Supreme Court has

12  recognized the validity of the overbreadth doctrine in various contexts. *See*

13  *Broadrick v. Oklahoma,* 413 U.S. 601, 615-16 (speech) (1973); *Aptheker v.*

14  *Secretary of State*, 378 U.S. 500, 516 (1964) (right to travel); *Stenberg v. Carhart,*

15  530 U.S. 914, 944-45 (abortion) (2000).

16       The Second Amendment should be the next context because there's very

17  little doubt here that a substantial number of the ordinance's applications are

18  unconstitutional in relation to its plainly legitimate sweep. See also *Hardaway v.*

19  *Nigrelli*, No. 22-CV-771, 2022 U.S. Dist. LEXIS 200813, at *44-45 (W.D.N.Y.

20  Nov. 3, 2022) ("*Hardaway*") and *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at

21  *40 (both courts rejecting New York's similar facial challenge arguments to what

22  the City argues here). Given the significant presumptive unlawfulness of the

23  Ordinance's sweep under *Bruen*, this situation appears to be a solid fit for the

24  overbreadth doctrine.

25  **3.**    **APPLYING *BRUEN***

26

27      **A.**    ***Bruen's* Sensitive Areas Carve-out is Not Exempt from the *Bruen*
           Analysis**

28  Plaintiffs have stated repeatedly in both the complaint and in their motion

that their members want to carry handguns in public for self-defense in Glendale, including areas the Ordinance prohibits. Plaintiffs have therefore established that their conduct is covered under the Second Amendment's plain text. Courts applying the plain text standard have already found in favor of plaintiffs who alleged the same. For example, a New York district court hearing associational plaintiffs' challenge to New York's nascent "sensitive places" carry restrictions (including public property such as public transportation and public parks) recently explained:

> The Court respectfully reminds Defendants that, because the Second Amendment's plain text covers the conduct in question (carrying a handgun in public for self-defense), "the Constitution presumptively protects that conduct." *NYSRPA*, 142 S. Ct. at 2126. Defendants must then rebut the presumption by "demonstrate[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* This they have not yet done.

*Antonyuk v. Hochul,* No. 1:22-CV-0986, 2022 U.S. Dist. LEXIS 182965, at *35-36 (N.D.N.Y. Oct. 6, 2022) ("*Antonyuk I*").

"[Plaintiffs] are ordinary, law-abiding citizens to which the Second Amendment applies . . . As it did for the petitioners in *Bruen*, the Second Amendment's plain text thus presumptively guarantees Plaintiffs' right to 'bear' arms in public for self-defense. . . ." *Hardaway*, 2022 U.S. Dist. LEXIS 200813, at *32.[2]

Instead, the City proposes a standard allowing it to skip the sensitive places analysis by simply declaring certain places off limits to carry. The City's assertion that the Second Amendment does not apply in the areas it has chosen to ban carry plainly puts the cart before the horse. *Bruen* certainly did not hold that all public property is presumptively off limits for carry; it held the opposite. In discussing "sensitive places", the Supreme Court was clear that "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were

---

[2] While *Antonyuk I, Antonyuk II,* and *Hardaway* obviously do not bind this Court, they are the first post-*Bruen* federal court rulings on the "sensitive places" question. *Antonyuk II* is the ruling on plaintiffs' motion for preliminary injunction following the temporary restraining order ruling issued in *Antonyuk I.*

altogether prohibited . . . ." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2133 (2022) ("*Bruen*"). While new sensitive places may exist, they must be supported by analogous regulations from the time just following the adoption of the Bill of Rights (18th Century) or the period of the 19th Century leading to the adoption of the Fourteenth Amendment, to pass constitutional muster; and even then they will be the exception to an otherwise broad right to carry.

There is also a distinction between *government buildings* and the Ordinance's prohibition of carrying on *city property*. Indeed, Plaintiffs do not dispute that the City can restrict firearm carry at certain sensitive government buildings. Mot. at 10-11. For example, Plaintiffs do not necessarily object to City Hall being off limits for carry, as that is plainly analogous to the "legislative assemblies" mentioned in *Heller* and *Bruen*. But the distinction between government buildings where the business of government is conducted, and all public property generally, is critical. *Bruen* gave its blessing to restrictions on the former, not the latter.

Public property is simply not a default "sensitive area." For example, the Tennessee Court of Appeals ruled that tenants in public housing did not forfeit their Second Amendment rights. *Columbia Hous. & Redevelopment Corp. v. Braden*, No. M2021-00329-COA-R3-CV, 2022 Tenn. App. LEXIS 395, *10 (Ct. App. Oct. 13, 2022). See also *Morris v. United States Army Corps of Eng'rs*, 60 F. Supp. 3d 1120, 1125 (D. Idaho 2014) ("The regulation banning the use of handguns on Corps' property by law-abiding citizens for self-defense purposes violates the Second Amendment. . . ."). Similarly, the *Antonyuk II* court ruled that New York may not ban carry in a variety of public property, such as public parks and buses. *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *190-192, 197-203.

In the speech context, the City would never suggest that all of its property—including parks and parking lots—is off limits for free speech, yet the Ordinance does just that for the equally fundamental right to bear arms. In light of *Bruen*, the

7

Second Amendment is no longer a "disfavored right." *Peruta v. California*, 137 S. Ct. 1995, 1999 (2017) (Thomas, J., dissenting from denial of certiorari). The plain text of the Second Amendment protects Plaintiffs' members' right to carry on City property. If the City wants to shrink the scope of that property, it must present "well-established and representative" historical analogues. *Bruen*, 142 S. Ct at 2133. It has not done so.

### B.   The City's Complaints About Lack of Time to Prepare its Opposition are Unavailing

The City complains it has not had enough time to conduct a historical analysis. Opp. at 9-10. But *Bruen* does not demand that government defendants present Ph.D. dissertations on American history. Instead, the city "must demonstrate that the regulation is consistent with this Nation's historical tradition of *firearm regulation*." *Bruen*, 142 S. Ct at 2126, emphasis added. The *Bruen* case itself had no discovery in the district court proceedings when it was decided. *Id*. at 2164. (Breyer, J., dissenting). The Court analyzed the variety of historic laws New York had presented, which is all the analysis requires. Judges are better equipped than anyone to compare modern laws to old ones without extrinsic aids. The *Hardaway* court agreed, stating "The Court's view of the State's expert's declaration is that live testimony and cross examination are not needed . . . [t]he historical record itself, and not expert arguments or opinions, informs the analysis." *Hardaway,* 2022 U.S. Dist. LEXIS 200813, at *6 n.6. "The State Defendants are fully capable of meeting their burden of producing analogues (especially when prodded to do so), and judges appear uniquely qualified at interpreting the meaning of statutes." *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *121 n.72.

The City also had the benefit of reviewing the briefing in the New York cases on similar issues, and indeed, borrowed some of New York's arguments and evidence verbatim. The reason the City cannot present further historical laws is not lack of time, it's because *they do not exist*.

## C.     The City Cites Very Few Relevant Analogues

*Bruen* clarified that not all history is created equal in the historical analog context. "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S. Ct. at 2136. Likewise, late-19th Century evidence has little value, and the court did not even consider 20th Century evidence. *Id.* at 2154 n.28. And here, the City grasps at straws for analogues. Opp. at 10-12.  Notably, it includes only *one* law from the founding era, a 1776 law in Delaware prohibiting being armed at polling places. *All* of the other supposed analogues the City cites were enacted in the 1860's or later, and several were enacted in the late-19th Century.[3]

Like the Delaware law, most of the laws the City presents are not relevant because they concern restrictions on carrying in places not at issue with the Ordinance. The list includes laws restricting carry in polling places, churches, schools, "social gatherings," other public gatherings, and similarly irrelevant areas. A few of the laws the City presents are total bans on firearm possession within a city, such as the 1889 Idaho law and the 1881 St. Louis Ordinance. *Bruen* already rejected such total bans. "[T]here is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Bruen*, 142 S. Ct. at 2118-19. The City also offers several laws from pre-state territories, but the Supreme Court has already held territorial laws insufficient. *Id.* at 2153-2156; see also *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *16 n.7 (explaining why laws from the Western Territories are given less weight under *Bruen*).

The City also cites *English v. State*, 35 Tex. 473 (1871) and *Hill v. State*, 53

---

[3] Contrary to *Bruen's* guidance, the City discusses several 20th Century laws as being persuasive. Because the Supreme Court expressly avoided consideration of 20th Century evidence due to its lack of nexus to the understanding of the Second Amendment at adoption and incorporation, Plaintiffs will not address these.

Ga. 472 (1874). But the Supreme Court already said was *English* was an "outlier" that "provide[s] little insight into how postbellum courts viewed the right to carry protected arms in public," (*Bruen* 142 S. Ct at 2153), and the Ninth Circuit discounted both *Hill* and *English*, because it followed *State v. Buzzard,* 4 Ark. 18 (1842) which held that "the Second Amendment served as no bar to the Arkansas legislature's authority to restrict *any* carrying of firearms. . . ." *See Young v. Hawaii*, 896 F.3d 1044, 1057 (9th Cir. 2018), *rev'd en banc,* 992 F.3d 765, 773 (9th Cir. 2021), *rev'd*, 142 S. Ct. 2895 (2022). The *Young* panel explained that "with *Heller* on the books, cases in *Buzzard*'s flock furnish us with little instructive value." *Id*.

Lastly, the City relies on mostly pre-*Bruen* cases, including *United States v. Masciandaro*, whose reasoning about "large numbers of people" was undone by Congressional enactment of 16 U.S.C. § 1a-7b(b), and repudiated by *Bruen's* prohibition on barring carry just because people congregate at a particular place. *Christopher v. Ramsey County* outright ignores *Bruen*, and is therefore not instructive. *See Christopher v. Ramsey Cty.,* No. 21-2292, 2022 U.S. Dist. LEXIS 144159 (D. Minn. Aug. 12, 2022).

### D. The Few Valid Analogues That Are Cited Are Not Sufficient to Support the Ordinance's Restrictions

People carrying concealed firearms is not a new problem. When a modern regulation addresses a general societal problem which has persisted since before the 18th Century, "the lack of a historical analogue is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. . . ." *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *17.

The Ordinance does not implicate any "unprecedented societal concern" or "dramatic technological change." So the City's burden here is high; it does not have justification to argue for a "more nuanced approach" to the historical analogues analysis and should thus be limited to only "dead-ringer" historical laws, or at

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
2:22-cv-07346-SB-JC

minimum, very closely related analogues. *Bruen*, 142 S. Ct at 2132. Nevertheless, Plaintiffs briefly respond to the City's proposed analogues to show why they are not sufficient even if stretched analogies were permissible here:

### i.      Crowded places.

The City argues that the "[h]istory also clearly supports prohibitions on firearms in private places where people gather in large crowds and confined spaces." Opp. at 13-14. The Ordinance does not limit its application to crowded places, private places, or times when City Property is crowded, and no historical law the City cites actually refers to "large crowds in confined spaces;" that is a historical analogue of the City's own invention.

The Supreme Court already rejected the notion that a place is sensitive just because people congregate there. *Bruen*, 142 S. Ct at 2118-19. The City seems to be arguing that because some of the places in its proposed analogues could be crowded, and because City Property is *sometimes* crowded, then it has presented a valid analogue. But "generally, a historical statute cannot earn the title 'analogue' if it is clearly more distinguishable than it is similar to the thing to which it is compared." *Antonyuk I*, 2022 U.S. Dist. LEXIS 182965, at *20. The City's property is plainly more distinguishable than it is similar to the places referenced in the historical statutes it cites in support of this "rule."

The City also argues that "the nature of such places may render armed self-defense impossible or impracticable—it is not possible to safely defend oneself with a gun in a crowded theater or stadium." Opp. at 14. This tautological argument is belied by numerous examples of high profile defensive shootings in such locations, *See, e.g.*, Complaint, ¶1 n.1 (discussing a July 17, 2022 shooting incident in Indiana where a shooter in a crowded mall was stopped by an armed concealed carrier).

Even if they were truly similar to the Ordinance, the analogues the City cites to support this supposed "crowded places" ban are also insufficient because there

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.

are not enough of them to constitute a "well-established and representative historical analogue." *Bruen*, 142 S. Ct at 2133. The City cites only two state laws and only two late-19 Century laws from the territories. "Again, to the extent these laws come from territories near the last decade of the 19th century . . . the Court affords them little weight . . . With regard to the remaining two . . . the Court finds they are simply not enough to render those laws either established or representative." *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *212.

The City cites no laws from the ratification era. The *Hardaway* court—which analyzed specific historical laws involving restrictions on carrying firearms in churches, not vague crowded places—deemed four state laws and two territory laws insufficient to support New York's modern restrictions. "The State cites to 1870-1890 enactments by four states (Texas, Georgia, Missouri, and Virginia) and the territories of Arizona and Oklahoma that contained place of worship firearm restrictions. This does not carry the State's burden. . . ." *Hardaway,* 2022 U.S. Dist. LEXIS 200813, at *31.

## ii.    Parks.

The City cites three local ordinances from New York, Philadelphia, and St. Paul prohibiting firearms in certain parks or all parks. But if multiple historic *state* laws were insufficient to save New York's law in *Bruen*, then clearly a few local restrictions cannot establish a historical tradition of prohibiting carry in parks. *Bruen* also rejected the notion that ordinances from a few cities are persuasive. *Bruen*, 142 S. Ct at 2156.

In rejecting New York's carry restrictions in parks and other places of recreation, the *Antonyuk I* court explained that aside from "the lack of historical analogues supporting these particular provisions, in the Court's view, the common thread tying them together is the fact that they all regard locations where (1) people typically congregate or visit and (2) law-enforcement or other security professionals are—presumably—readily available. This is precisely the definition of 'sensitive

12

locations' that the Supreme Court in NYSRPA considered and rejected." *Antonyuk I*, 2022 U.S. Dist. LEXIS 182965, at *47. "[E]ven if the number and geographical origins of these city laws . . . were sufficient to constitute a tradition that was established, they do not constitute a tradition that was representative of the Nation." *Antonyuk II,* 2022 U.S. Dist. LEXIS 201944, at *191.

### iii.   Government-owned property generally.

As discussed in Section 3.A, *supra*, Plaintiffs do not dispute that the City can ban firearm possession in some government buildings. See also *Antonyuk I*, 2022 U.S. Dist. LEXIS 182965, at *36-48 (upholding restrictions on carry in government buildings that serve the purpose of government administration, including courts, but striking restrictions on government-owned property like public transportation and parks). To be sure, if there is no metal detector and security presence at the entrance of a government building, then such restrictions clearly cannot do anything to deter violent criminals. But the Supreme Court is clear that such government facilities are historically sensitive, so Plaintiffs do not ask this court to re-answer an already settled question.

But Plaintiffs reject the City's argument that all government property may prohibit carry, Opp. at 15, and that too was already discussed at length in Section 3A, *supra.* Indeed, the City cites no historical law suggesting firearm possession may be banned on all government-owned property, it only cites pre-*Bruen* caselaw.

### iv.   The City cites no analogues at all to support the remainder of its property.

The Ordinance covers a variety of places in Glendale, but the City attempted to provide analogues only for parks and government buildings. It failed to provide analogues for most of the places the Ordinance actually covers, including but not limited to its sports facilities, public libraries, parking lots and structures, its civic auditorium and civic center, "open spaces," and more. The Ordinance thus fails under *Bruen,* and must be enjoined.

REPLY IN SUPPORT OF PLA'S' MTN. FOR PRELIMINARY INJ.
2:22-cv-07346-SB-JC

**4.    THE CITY IMPROPERLY INVITES THIS COURT TO DEFY BRUEN BY ENGAGING IN AN INTEREST-BALANCING ANALYSIS**

*Bruen* expressly forbids interest balancing, which the opposition nonetheless argues for. Anticipating this, Plaintiffs submitted government data from three states to show how rarely CCW holders break the law. Mot. at 19-22. Indeed, given the lack of signage notifying CCW permit holders that carry is prohibited,[4] many people with carry permits likely have carried in prohibited areas in Glendale, unaware that they broke the law.

The City objected to that data and argues the Court may not consider it. It then provided a trove of materials for judicial notice which argue, essentially, that guns are dangerous. Some materials are works from antigun groups like Everytown and Giffords. But the City does not explain why this Court would *not* be able to take notice of Plaintiffs' state government data, but *would* be able to take notice of, e.g., "fact sheets" from private sector antigun advocacy groups. None of this comports with *Bruen*.  There, the Supreme Court reiterated that courts may not apply a "means-ends" "interest-balancing" test akin to "intermediate scrutiny" in Second Amendment cases. *Bruen*, 142 S. Ct at 2129. *Bruen* emphatically stated that lower courts may not apply the interest balancing analysis the City asks this Court to apply. Opp. at 17, 20-23.

The City further asserts that Plaintiffs must provide evidence of specific threats to show that they suffer irreparable harm. Opp. at 21. But that is not the standard. The Second Amendment protects the right to armed self-defense in public just as much as in the home (*Bruen*, 142 S. Ct. at 2134-2135) and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

---

[4] Due to page limitations, Plaintiffs cannot reply to the City's opposition as to their due process claim. They certainly do not concede that argument and stand by their opening brief. The City's argument that simply making a municipal code available online is sufficient notice is divorced from reality; people generally do not read the local laws of the cities they travel to and through.

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The City cannot avoid a preliminary injunction with speculative concerns. As much as the City may wish otherwise, this is a Constitutional right that cannot be "balanced" away.

Finally, the public interest is also in Plaintiffs' favor. "[A]ll citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). And specific to the right to carry, "[a] preliminary injunction would…serve the public interest of fostering self-defense…The public has a significant interest in the 'strong sense of the safety that a licensed concealed handgun regularly provides, or would provide, to the many law-abiding responsible citizens in the state too powerless to physically defend themselves in public without a handgun.' " *Hardaway*, 2022 U.S. Dist. LEXIS 200813, at *43, citing *Antonyuk v. Bruen,* No. 1:22-CV-0734, 2022 U.S. Dist. LEXIS 157874, at *100 (N.D.N.Y. Aug. 31, 2022).

## 5.    CONCLUSION

For these reasons as well as those discussed in the opening brief, Plaintiffs implore this Court to grant their motion to preliminarily enjoin Glendale Municipal Code section 9.25.040(A) as to individuals with CCW permits.

Respectfully Submitted,

Dated:  November 9, 2022                **MICHEL & ASSOCIATES, P.C.**

 /s/ C.D. Michel
Attorneys for Plaintiffs California Rifle &
Pistol Association, Incorporated and Gun
Owners of California, Inc.

**Law Offices of Donald Kilmer, APC**

/s/ Donald Kilmer
Attorney for Plaintiff The Second
Amendment Foundation

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *California Rifle and Pistol Association, v. City of Glendale, et al.*
Case No.:    2:22-cv-07346-SB-JC

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:
**REPLY BRIEF IN SUPPORT OF  PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michael J. Garcia, City Attorney
Edward B. Kang, Principal Assistant City Attorney
ekang@glendaleca.gov
613 E. Broadway, Suite 220
Glendale, CA 91206
    *Attorney for Defendants*

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 9, 2022.

Christina Castron

I declare under penalty of perjury that the foregoing is true and correct.