UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIFLE AND PISTOL ASSOCIATION, INC. et al., | Case No. 2:22-cv-07346-SB-JC |
| Plaintiffs, | |
| v. | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 13] |
| CITY OF GLENDALE et al., | |
| Defendants. | |

In this action, three gun advocacy groups challenge an ordinance of Defendant City of Glendale that generally prohibits the possession of firearms on city property.  Plaintiffs contend that the ordinance violates their Second Amendment rights under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  Although Plaintiffs concede that the City may constitutionally prohibit firearms in some of the areas covered by the ordinance, they move to preliminarily enjoin its enforcement against holders of concealed carry weapon (CCW) licenses under all circumstances.  Dkt. No. 13.  The City, together with its chief of police and city clerk (who have been sued in their official capacities), oppose any injunction, arguing that Plaintiffs lack standing and have not met their burden to prevail on either a facial or an as-applied challenge.  The Court held a non-evidentiary hearing on December 6, 2022.[1]  The Court concludes that on this record, Plaintiffs have not met their burden to show a likelihood of success on the claims they advance in their motion.

---

[1] The parties jointly agreed in advance not to present any further evidence beyond the exhibits for which they sought judicial notice and the declarations in their written submissions.  Dkt. No. 16.

I.

Plaintiffs California Rifle & Pistol Association, Inc. (California Rifle), The Second Amendment Foundation, and Gun Owners of California, Inc. are non-profit organizations that advocate for the Second Amendment rights of their members. They bring this action on behalf of their members who hold CCW licenses and either live in or regularly visit the City of Glendale. Chapter 9.25 of the Glendale Municipal Code restricts the sale and possession of firearms and ammunition on city property. Plaintiffs challenge only the portion of the ordinance addressing possession. Although the parties have not filed a copy of the ordinance, the Court takes judicial notice that it may be found at https://library.qcode.us/lib/glendale_ca/pub/municipal_code/item/title_9-chapter_9_25. The ordinance was adopted in March 2013 in response to the city council's finding that "the incidence of gunshot fatalities and injuries has reached alarming, and thus, unacceptable proportions." Glendale Municipal Code § 9.25.020(A). Its stated purposes include "protecting vulnerable populations—a high number of people who congregate at sensitive places such as city buildings, city playgrounds, city community centers, and other city public facilities." *Id*. § 9.25.010(A)(1).

Plaintiffs challenge § 9.25.040(A), which provides:

No person shall:

A.  Bring onto or possess on city property:

    1.  A firearm, loaded or unloaded.

    2.  Ammunition for a firearm.[2]

Section 9.25.030 defines "city property" as:

real property, including any buildings thereon, owned, leased, or subleased by the City of Glendale ("city") and in the city's possession—or in the possession of a public or private entity, corporation, or person under contract with the city to perform a public purpose—including, but not limited to, the following property:  parks, playgrounds, open space, plazas, community centers, facilities

---

[2] The parties focus on the firearm prohibition, but it appears to be undisputed that the same analysis applies equally to restrictions on ammunition. For purposes of this motion, the Court's references to firearms apply also to ammunition.

(including the Glendale Civic Auditorium, the city's civic center complex, and city libraries), parking lots, and parking structures.

"City property" does not include "the public right-of-way owned by the city, including any area across, along, on, over, upon, and within the dedicated public alleys, boulevards, courts, lanes, roads, sidewalks, streets, and ways within the city." *Id*.

The ordinance states that "[i]n addition to buildings housing its officials and employees where the public must come to conduct business with the city, the city operates numerous public facilities that provide public services at those locations," including 47 parks and recreation facilities, 8 public libraries, a youth center, an emergency shelter, 9 fire stations, "numerous Glendale Water and Power facilities," and the "Glendale Civic." *Id.* § 9.25.020(J), (K). Defendants produce undisputed declaration testimony that there are also five properties owned by public or private entities that are under contract with the City to perform a public service: the open green space in the center of the Americana; a parking lot at the Glendale Fashion Center; two parking garages[3] at the Glendale Galleria; and a small strip of open space at the corner of Broadway and W. Glenoaks Blvd. Dkt. No. 19-1 ¶ 2.

The ordinance provides various exceptions to the ban for specific groups of people, including law enforcement officers, security guards, and members of the military under certain circumstances. Glendale Municipal Code § 9.25.050. There is no exception for holders of CCW licenses who do not fall into one of the other groups.

Plaintiffs allege that the Ordinance is unconstitutional both facially and as applied to Plaintiffs' members because it (1) violates their Second Amendment right to publicly bear arms in non-sensitive places and (2) violates their due process rights by "not requiring all places where carry is forbidden to post signs clearly stating so." Dkt. No. 1 ¶¶ 65–66. Plaintiffs seek declaratory relief and an order preliminarily and permanently enjoining the City and its officers from enforcing § 9.25.040(A). *Id*. at 23. Plaintiffs now move for a preliminary injunction broadly prohibiting Defendants from "engaging in, committing, or performing, directly or indirectly, by any means whatsoever, any enforcement of Glendale Municipal Code § 9.25.0[4]0, subd. (A) against any individuals with

---

[3] The declaration refers to these as a single property, for a total of four.

3

concealed handgun licenses issued pursuant to California Penal Code sections 26150 or 26155."  Dkt. No. 13-5 (proposed order); *see also* Dkt. Nos. 13 (motion), 13-1 (memorandum).

II.

Defendants challenge Plaintiffs' standing, arguing that none of them has adequately alleged an injury necessitating injunctive relief.  In a multi-plaintiff case, a finding that one plaintiff has standing is sufficient to satisfy Article III's case-or-controversy requirement.  *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (limiting discussion to one party found to have standing); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("[O]nce the court determines that one of the plaintiffs has standing, it [generally] need not decide the standing of the others").  An organization like Plaintiffs can establish associational standing by showing that (1) its members would have standing if they were plaintiffs, (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013).  Defendants dispute only the first prong.  To satisfy that requirement, an association must identify an affected member by name and show that the member has suffered or will suffer harm.  *Id.* at 1194–95.  The member's injury must be fairly traceable to the defendant's challenged conduct and likely to be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The declarations initially submitted by Plaintiffs in connection with their motion did not name any individual members of Plaintiffs who are affected by the ordinance.  Dkt. Nos. 13-2, 13-3, 13-4.  After Defendants challenged Plaintiffs' standing, Plaintiffs submitted additional declarations of Konstadinos Moros and Joshua Dale, both of whom are attorneys for Plaintiffs and members of California Rifle who have valid CCW licenses and frequently travel to Glendale.  Dkt. Nos. 24-1, 24-2.  Defendants object to these declarations as evidence improperly raised for the first time in a reply brief.  Dkt. No. 26.  Because Defendants challenged

4

Plaintiffs' standing in their opposition, Plaintiffs were permitted to submit rebuttal evidence in their reply. L.R. 7-10. Defendants' objection is overruled.[4]

Although the Moros and Dale declarations adequately identify members of one Plaintiff, the Court must still consider Defendants' contention that Plaintiffs have not demonstrated an injury in fact. Defendants produce uncontroverted evidence that no citations have ever been issued for a violation of § 9.25.040. Dkt. No. 19-2. Plaintiffs do not contend that Moros, Dale, or any other member of Plaintiffs has ever been cited or expressly threatened with prosecution under § 9.25.040. Nevertheless, when a plaintiff faces a realistic threat that a law will be enforced against him, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Thus, a plaintiff may bring a pre-enforcement challenge where (1) he intends to perform conduct that is arguably constitutionally protected, (2) the conduct is prohibited by the rule or statute challenged, and (3) there is a credible threat of enforcement. *Id.* at 160. To determine if there is a genuine threat of enforcement, courts in the Ninth Circuit consider whether there is a "concrete plan" to violate the challenged law, whether the government has made a specific warning or threat to enforce the law, and the law's prior enforcement history. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652–53 (9th Cir. 2021).

At this preliminary stage, Plaintiffs have met their burden to bring a pre-enforcement challenge. Both Moros and Dale state in their declarations that they frequently travel to Glendale, and they identify locations in the City that are subject to the ordinance and that they have visited and expect to continue visiting. Dkt. Nos. 24-1, 24-2. Both of them plausibly assert that they would carry their concealed guns (as otherwise authorized by their CCW licenses) but for § 9.25.040. Although there is no evidence that Defendants have ever directly threatened to enforce the ordinance against Moros and Dale, Defendants argue at length in their opposition that enjoining enforcement of the ordinance would cause serious safety risks for the City, which strongly suggests an intent to enforce the law. *See Bonta*, 996 F.3d at 653 ("[T]he state's refusal to disavow enforcement of AB-5 against motor carriers during this litigation is strong evidence that the state intends to enforce the law and that [the plaintiff's] members face a credible threat."). Finally, the fact that the City has no record of issuing citations for

---

[4] In light of the Moros and Dale declarations, the Court does not rely on the more general declarations submitted with the motion, and Defendants' objections to those declarations at Dkt. No. 21 are overruled as moot.

violations of § 9.25.040 is not dispositive on this record.  The ordinance is less than a decade old, and there is no evidence suggesting that Defendants have ever been aware of violations and chosen to ignore them.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (giving "little weight" to the third factor where the challenged provision "is relatively new and the record contains little information as to enforcement or interpretation").

Applying the *Bonta* factors, the Court finds that Moros and Dale have suffered an injury in fact and would have standing to sue as individuals to challenge the ordinance.  Accordingly, California Rifle has standing, and Article III's case-or-controversy requirement is satisfied.[5]

III.

Apart from the declarations discussed above, the parties have not produced any evidence specific to the facts of this case.  Both sides, however, request that the Court take judicial notice of various matters related to the broader national debate on gun policy.  Plaintiffs offer five "public safety reports" and news releases, Dkt. No. 14, while Defendants offer dozens of statutes, ordinances, and publicly available reports about gun violence and deaths, Dkt. No. 23.  With the exception of the laws and regulations produced by Defendants, both sides object to judicial notice of the other's proffered publications.  Dkt. Nos. 20, 25.

The Court may properly consider the statutes, ordinances, and regulations identified by Defendants, although judicial notice is unnecessary.  *See, e.g., Lathan v. Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017) (denying as unnecessary request for judicial notice of "statutes, regulations, or published opinions").  But the Court on this motion does not reach the historical analysis for which those laws may be relevant, so Defendants' request is moot. The parties' remaining exhibits appear to be offered to support their opposing

---

[5] That Plaintiffs have standing to challenge the ordinance does not necessarily mean that they have standing to obtain the specific relief they seek in this motion. The standing requirement extends to each claim and each remedy sought.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  As discussed below, Plaintiffs seek to enjoin enforcement of the ordinance even in locations where they have not established that they intend to bring firearms and in government buildings that they concede are "sensitive places" under *Bruen*.  No case or controversy appears to exist as to the constitutionality of the ordinance's enforcement in such locations.

policy views on the wisdom of gun regulation.  Such evidence is irrelevant to the Second Amendment analysis that will be required in this case.  *See Bruen*, 142 S. Ct. at 2129 (explaining that the Supreme Court has "expressly rejected the application of any judge-empowering interest-balancing inquiry" that weighs the benefits of regulations of rights secured by the Second Amendment (cleaned up)); *id*. at 2157–59 (Alito, J., concurring) (observing that statistics and anecdotes about gun ownership and crime are irrelevant to the constitutionality analysis).

Moreover, even if the exhibits were relevant, they are not a proper subject of judicial notice under Federal Rule of Evidence 201(b) because the parties have not identified specific facts within them that are generally known and not subject to reasonable dispute.[6]  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (noting that while a court may generally take judicial notice of public records, it "cannot take judicial notice of disputed facts contained in such public records" and must "consider—and identify—which fact or facts it is noticing" from a document that is susceptible to judicial notice).  Accordingly, the parties' requests for judicial notice are DENIED.

IV.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The first factor, likelihood of success on the merits, is the most important, and if a movant fails to meet this "threshold inquiry," it is unnecessary to consider the other factors in the absence of serious questions going to the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A.

Plaintiffs claim that § 9.25.040(A) violates the Second Amendment (incorporated through the Fourteenth Amendment), both facially and as applied to the facts of this case.  Classifying a lawsuit as facial or as-applied does not affect the substantive rule of law necessary to establish a violation, but it determines "the

---

[6] The parties' extensive reliance on judicial notice is especially perplexing in the context of a preliminary injunction motion for which the parties are permitted to produce evidence.

extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).

The Supreme Court recently clarified the standard to be applied in Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129–30 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). The Court in both *D.C. v. Heller*, 554 U.S. 570 (2008), and *Bruen* identified limits to the Second Amendment's protections, including, as relevant here, that governments may restrict the possession of firearms in certain "sensitive places." In *Heller*, the Court noted that "nothing in our opinion should be taken to cast doubt on "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. at 626. The Court went further in *Bruen*, expressly stating that the carrying of firearms could be constitutionally prohibited in similar sensitive places:

> Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited—e.g., legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. We therefore can assume it settled that these locations were "sensitive places" where arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible.

142 S. Ct. at 2133 (citation omitted).

The ultimate dispute in this case boils down to whether and to what extent § 9.25.040(A) prohibits firearms on city property that falls outside the "sensitive places" discussed in *Heller* and *Bruen*. But the Court on this record cannot resolve

that dispute or provide Plaintiffs the injunctive relief they seek because of deficiencies in both their facial and as-applied challenges.

1.

A facial challenge is "a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew*, 139 S. Ct. at 1127. "Under *United States v. Salerno*, 481 U.S. 739, (1987), a plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (cleaned up). "Facial challenges are disfavored for several reasons," including that they "run contrary to the fundamental principle of judicial restraint that courts should [not] . . . formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id*. at 450 (cleaned up).

Plaintiffs concede in their motion (and reiterated at the hearing) that Defendants may constitutionally prohibit the possession of firearms on some city property: "To be sure, Plaintiffs do not dispute that the City can restrict firearms at schools and certain sensitive government buildings, including 'legislative assemblies, polling places, and courthouses,' or any closely analogous sensitive places." Dkt. No. 13-1 at 10–11 (citing *Bruen*, 142 S. Ct. at 2133); *see also* Dkt. No. 24 at 7 ("Plaintiffs do not dispute that the City can restrict firearm carry at certain sensitive government buildings."). Thus, by Plaintiffs' own admission, they cannot show that § 9.25.040(A) "is unconstitutional in all of its applications," and the Court therefore cannot find the ordinance facially unconstitutional. *Washington*, 552 U.S. at 449.

In their reply, Plaintiffs challenge the applicability of the *Salerno* "no set of circumstances" test on several grounds. Dkt. No. 24 at 3–5. First, they argue that the ordinance is subject to a facial challenge because it facially extends to non-sensitive areas, citing *United States v. Kaczynski*, 551 F.3d 1120, 1125 (9th Cir. 2009), for the proposition that a court can sever the unconstitutional portion of a statute. But the Ninth Circuit in *Kaczynski* rejected a similar argument, emphasizing that "[a] court does not sever a statute *prior* to determining whether it is facially valid" and reiterating that a "statute is not facially invalid unless the statute can *never* be applied in a constitutional manner." *Id*. (cleaned up). The plaintiff in *Kaczynski* argued that a restitution statute was facially invalid as to certain property that he claimed was protected by the First Amendment and that the statute could be severed and held partially unconstitutional. The court disagreed,

9

finding that the plaintiff did not raise a proper facial challenge because he was arguing only that the statute was unconstitutional in some situations. *Id*. at 1126.

Second, and relatedly, Plaintiffs contend that the distinction between facial and as-applied challenges is not clearly defined and goes to the breadth of the remedy. They argue that the remedy here "includes declaring the portions of the Ordinance that are facially suspect unconstitutional, and letting any constitutional portions stand." Dkt. No. 24 at 4. But Plaintiffs seek an injunction completely prohibiting Defendants from enforcing § 9.25.040(A) against their CCW license-holding members, despite acknowledging that they can be prohibited from carrying firearms on some city property. Dkt. No. 13-5. Thus, even if Plaintiffs' view of the law were correct, their argument fails.

Third, Plaintiffs cite a 2003 Ninth Circuit decision questioning the continuing viability of the "no set of circumstances" requirement. *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003). But the Supreme Court subsequently reiterated that standard. *Washington*, 552 U.S. at 449 ("Under [*Salerno*], a plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications. While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a plainly legitimate sweep." (cleaned up)); *see also Kaczynski*, 551 F.3d at 1124 (quoting *Washington* and reiterating *Salerno* test in 2009, after *Hotel & Motel*). *Salerno* and *Washington* therefore continue to provide the binding legal standard for facial challenges.

Finally, Plaintiffs argue that the overbreadth doctrine permits a facial challenge without showing that a challenged law has no possible constitutional application. "The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). In support of their overbreadth argument, Plaintiffs rely solely on two recent district court decisions from New York that enjoined firearm restrictions in the wake of *Bruen*, *Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022), and *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022). But neither decision purports to adopt the First Amendment overbreadth doctrine, and neither case involved plaintiffs who conceded that the challenged restriction could be constitutionally applied in some instances. Plaintiffs conceded at the hearing that *Hardaway* and *Antonyuk* did not consider the distinct issues raised here, and they cite no binding authority that would permit this Court to disregard *Salerno* and

*Washington* and extend the overbreadth doctrine into the Second Amendment context.

In sum, because Plaintiffs concede that the City may prohibit their members from carrying firearms on at least some city property, they have not shown that § 9.25.040(A) is unconstitutional in all its applications. Plaintiffs therefore are unlikely to succeed on the merits of their facial Second Amendment challenge.

2.

Unlike a facial challenge, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular . . . activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Although Plaintiffs claim to bring an as-applied challenge, they make no arguments about the desired conduct of any particular member at any particular location, and they request an injunction completely prohibiting Defendants from enforcing the ordinance in any manner against their members with CCW licenses. Thus, their characterization of their claim as an as-applied challenge is dubious, at least with respect to the arguments and the relief sought in the instant motion.

Moreover, Plaintiffs' failure to make any arguments about the particular activities of their members makes it impossible for the Court to determine whether the ordinance, *as applied to Plaintiffs*, is unconstitutional.[7] In light of their concession that the City may prohibit firearms on some of its property, Plaintiffs' contention that other city property does not constitute "sensitive places," if true, necessarily means that the constitutional analysis will be resolved differently depending on which property Plaintiffs' members wish to visit while armed. Their

---

[7] The Court arguably could look to the declarations attached to Plaintiffs' reply as evidence of the specific places Plaintiffs wish to carry firearms, but such an approach would be problematic for several reasons, including: (1) Plaintiffs request much broader relief and plainly do not wish to limit their challenge to the locations specifically referenced in the declarations, (2) Plaintiffs have not made any argument in support of such analysis and cite the declarations only briefly in connection with their standing argument, and (3) to the extent Plaintiffs could be deemed to have defined the scope of their as-applied challenge through the declarations, Defendants have not had a fair opportunity to respond.

concession also necessarily means that the proper scope of any injunction depends on the resolution of that fact-specific inquiry.  For example, if the Court were to find that the City's libraries are not "sensitive" places for which historical practice permits the prohibition of firearms, the proper remedy would be to enjoin the City from enforcing § 9.25.040(A) against Plaintiff's CCW license-holding members in the City's libraries, not—as Plaintiffs request—to enjoin its enforcement altogether.  *See id*. ("A successful as-applied challenge does not render the law itself invalid but only the particular application of the law.").

Plaintiffs suggest that merely stating their general desire to carry firearms in the City is sufficient to shift the burden to Defendants to justify § 9.25.040(A)'s application in each area Defendants contend is sensitive.  To be sure, *Bruen* establishes that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and "[t]he government must then justify its regulation" based on historical practice. 142 S. Ct. at 2129–30.  But the Court is unpersuaded that a plaintiff may simply assert a general desire to carry a firearm and thereby force the government to provide historical evidence of regulations addressing every separate location where the ordinance applies, at least in the context of an ordinance that the plaintiff concedes may be validly enforced in some locations and for which the historical constitutional analysis is location-specific.  Among other problems, such an approach runs the risk of violating Article III's case-or-controversy requirement by requiring the Court to determine whether Plaintiffs should be allowed to carry firearms when visiting places they have no desire to go or as to which there is no genuine dispute about the constitutionality of the ordinance's application.  There is no suggestion, for example, that any of Plaintiffs' members wish to carry guns into any of the Glendale Water and Power facilities that are covered by the ordinance.  "The rule against advisory opinions is 'the oldest and most consistent thread in the federal law of justiciability,'" *Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)), and a decision on the constitutionality of the ordinance as applied to a location that Plaintiffs do not seek to visit would be a paradigmatic advisory opinion.  Thus, Plaintiffs lack standing to bring an as-applied challenge seeking to enjoin the enforcement of the ordinance in locations to which they have not shown an intent to carry firearms.  On this record, the scope of Plaintiffs' standing for their as-applied challenge is unclear.

Accordingly, the historical analysis required for Plaintiffs' as-applied challenge must wait until Plaintiffs identify the areas in which they seek to carry firearms and which they contend are not "sensitive places" where the City may

prohibit guns.[8]  On this record, Plaintiffs have not shown a likelihood of success on the merits of their as-applied Second Amendment challenge seeking to completely prohibit Defendants from enforcing the ordinance against individuals with CCW licenses.

## B.

Plaintiffs also assert that Defendants are violating their due process rights by not posting signs at every location where firearms are prohibited.  Plaintiffs devote a little more than one page of their motion and a single footnote in their reply to this argument, and they cite no authorities requiring such signage or holding that municipalities may not prohibit the carrying of firearms in the absence of signs notifying the public of the ban.  Dkt. No. 13-1 at 16–17; Dkt. No. 24 at 14 n.4. *Lambert v. California*, on which Plaintiffs rely, addressed the notice required for a registration statute that criminalizes "conduct that is wholly passive—mere failure to register."  355 U.S. 225, 228 (1957).  Here, in contrast, the ordinance prohibits only active conduct—possessing and carrying firearms and ammunition on city property.  On this record, Plaintiffs have not shown that they are likely to succeed on the merits of their due process challenge.[9]

## C.

In the absence of a clearer identification of the specific desired conduct giving rise to their as-applied challenge, Plaintiffs have neither shown a likelihood of success on the merits nor raised serious questions going to the merits.  The

---

[8] The parties' comments at the hearing suggest that there are some locations covered by the ordinance as to which the parties agree that the Second Amendment either does or does not allow a complete firearm ban, although they have not yet conferred and identified the locations as to which they are in agreement.  Such discussions should have occurred before Plaintiffs filed their motion, and must occur before any subsequent motion is filed, as discussed below.  *See* Dkt. No. 9 at 8 (requiring that when parties meet and confer before the filing of a motion, "[i]f the parties are unable to fully resolve the dispute, they shall attempt to narrow the scope of the contested issue(s).").

[9] This conclusion is limited by the undeveloped record in this case and the posture of this lawsuit.  This Court has no occasion here to render an opinion on whether a criminal prosecution would violate due process absent a showing that the charged defendant had reasonable notice of the fact that he or she was on city property.

Court therefore does not reach the remaining *Winter* factors.  *Disney*, 869 F.3d at 856.

V.

Plaintiffs have not shown that they are entitled to the preliminary injunction requested in their motion.  The motion is therefore DENIED without prejudice to Plaintiffs filing a more narrowly focused motion identifying the specific locations for which they bring an as-applied challenge and seeking to enjoin enforcement of the ordinance in those locations.

As discussed at the hearing and reflected in the minutes, before Plaintiffs file such a motion, they are ordered to meet and confer with Defendants to identify the specific areas in dispute as to which Plaintiffs contend their members seek to carry and cannot constitutionally be prohibited from carrying firearms, as well as the locations that the parties agree are "sensitive areas" where firearms may be prohibited and any areas where Defendants concede that Plaintiffs' members cannot constitutionally be precluded from carrying firearms.  Any renewed motion for preliminary injunction must be supported by a declaration describing this process and its outcome, along with evidence that Plaintiffs have standing to challenge the enforcement of the ordinance in the particular locations for which they seek an injunction.

Date: December 5, 2022

_____
Stanley Blumenfeld, Jr.
United States District Judge