1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Joshua Robert Dale – SBN 209942
   jdale@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  Alexander A. Frank – SBN 311718
   afrank@michellawyers.com
5  MICHEL & ASSOCIATES, P.C.
   Telephone: (562) 216-4444
6  Facsimile:  (562) 216-4445
   www.michellawyers.com
7
   Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, and
8  Gun Owners of California, Inc., Nelson Gibbs, and John Leyba
9  Donald Kilmer-SBN 179986
   Law Offices of Donald Kilmer, APC
10 14085 Silver Ridge Road
   Caldwell, Idaho 83607
11 Telephone: (408) 264-8489
   Email: Don@DKLawOffice.com
12
   Attorney for Plaintiff The Second Amendment Foundation
13

14        IN THE UNITED STATES DISTRICT COURT

15           CENTRAL DISTRICT OF CALIFORNIA

16                  WESTERN DIVISION

17  | CALIFORNIA RIFLE & PISTOL | CASE NO: 2:22-CV-07346-SB-JC
    | ASSOCIATION, INCORPORATED; |
18  | THE SECOND AMENDMENT | [PROPOSED] FIRST AMENDED
    | FOUNDATION; and GUN OWNERS | COMPLAINT FOR DECLARATORY
19  | OF CALIFORNIA, INC; NELSON | AND INJUNCTIVE RELIEF
    | GIBBS, an individual; and JOHN |
20  | LEYBA, an individual, | 42 U.S.C. §§ 1983 & 1988

21              Plaintiffs,

22                  v.

23  CITY OF GLENDALE; GLENDALE
    CHIEF OF POLICE CARL
24  POVILAITIS, in his official capacity;
    GLENDALE CITY CLERK SUZIE
25  ABAJIAN, in her official capacity;
    and DOES 1-10,
26
               Defendants.
27

28

                              1
       [PROPOSED] FIRST AMENDED COMPLAINT FOR DECLARATORY AND

# EXHIBIT A

1   NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated,

2   The Second Amendment Foundation, ~~and~~ Gun Owners of California, Inc., Nelson

3   Gibbs, and John Leyba (collectively "Plaintiffs"), and allege against Defendants

4   City of Glendale, Glendale Chief of Police Carl Povilaitis, and Glendale City Clerk

5   Suzie Abajian (collectively "the City") as follows:

6   **INTRODUCTION**

7   1.   On July 17, 2022, a gunman opened fire at Greenwood Park Mall in

8   Greenwood, Indiana. Tragically, the assailant managed to kill three people.

9   Fortunately, his rampage was quickly cut short before it could get much worse

10  thanks to the actions of 22-year-old Elisjsha Dicken. Dicken, who was legally

11  carrying a concealed handgun, fired on the attacker several times from the

12  impressive distance of 40 yards, killing him. Dicken's actions likely saved the life

13  of his girlfriend who was there with him, and countless others as well.[1]

14  2.   On August 4, 2018, 150 children at a back to school event in a Florida

15  park were engaging in festivities when a shooter opened fire. Before anyone could

16  be injured or killed, an unnamed armed bystander who was legally carrying a

17  handgun shot down the gunman. Deputy Chief Todd Hutchinson commented "We

18  are extremely grateful that nobody else was injured in this incident…This suspect

19  opened fire at a crowded public park, this could have been so much worse."[2]

20  _____

21  [1]  National Review Editors, *A Good Guy With a Gun,* National Review, (July 20, 2022, 6:30 AM), < https://www.nationalreview.com/2022/07/a-good-guy-with-a-

22  gun/> (as of October 6, 2022) ("Just 15 seconds elapsed between the beginning of the shooting at the Greenwood Park Mall and Elisjsha Dicken's intervening. Had

23  Dicken not been there, the three innocent people who were killed would have been joined by many others.").

24  [2]  Kyle Swenson, *Bullets flew at a Florida 'Peace in the City' event for kids. An*
*armed bystander was ready.*, Washington Post (August 7, 2018, 5:00 AM),

25  <https://www.washingtonpost.com/news/morning-mix/wp/2018/08/07/bullets-flew-at-a-florida-peace-in-the-city-event-for-kids-an-armed-bystander-was-ready/> (as

26  of October 6, 2022); see also Chip Skambis, *Police: Armed bystander takes down*
*gunman at Titusville back-to-school event,* WFTV 9 ABC (August 24, 2018, 10:41

27  AM), <https://www.wftv.com/news/local/police-investigate-shooting-at-titusville-park/806192101/> (as of September 7, 2022).

28

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

3.       There are countless more examples of legally armed men and women heroically stopping criminals and saving lives, many of which have been recorded by the media. Such incidents range from people who stopped or mitigated mass killing attempts, to those who prevented far more common muggings or assaults. One database has recorded over 550 defensive gun use incidents so far in 2022 alone.[3] Such databases can of course only capture incidents reported by the media, leaving out many defensive gun uses that did not make the news.

4.       The two heroic individuals described above, as well as the thousands more who in recent years have defended themselves with their lawfully carried handguns, come from diverse backgrounds and all walks of life. But many of them have something in common. Had their heroic actions taken place in much of the City of Glendale—which makes it unlawful to possess a firearm on all city-owned or city-controlled property— these individuals would have likely been in violation of Glendale's Municipal Code.

5.       Glendale Municipal Code section 9.25.040(A) (the "Ordinance") generally bans possession on "city property" of any firearm or ammunition, and does not make any exception for those who have a license to carry a concealed handgun ("CCW Permit"). The term "city property" is defined to include effectively all public property within the City of Glendale, as well as some private property, with the only exception being streets/roads and sidewalks. In sum, other than streets/roads and sidewalks, the Ordinance makes it unlawful for the typical law-abiding adult to possess a firearm or ammunition on *any* public property, publicly controlled-property, or public-affiliated private property in the City of Glendale.

---

[3]  Heritage Staff, *Defensive Gun Uses in the U.S.*, Heritage, (July 26, 2022), <https://datavisualizations.heritage.org/firearms/defensive-gun-uses-in-the-us/> (as of October 6, 2022).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

6.      For example, Elisjsha Dicken stopped a shooting at the Greenwood Park Mall. An equivalent major shopping complex in Glendale is the Americana at Brand. The Americana is next to several parking structures people regularly use to park at when visiting, including the Orange Street Parking Structure, the Exchange Parking Garage, and the Marketplace Parking Structure. All three of those structures are operated by the City of Glendale and thus are off limits for anyone possessing a firearm. Had Mr. Dicken or someone like him parked their cars in such a structure before going to the Americana, they'd be in violation of the Ordinance.[4]

7.      The nameless hero in Florida who stopped the shooting at a park hosting a back to school event would likewise be in legal trouble if his action had occurred at a Glendale park. The City operates over 40 parks and recreation facilities and several playgrounds, and all of them are off limits for anyone possessing firearms.

8.      Off limits for anyone possessing firearms *who respects the law*, that is. Such limitations only actually stop law abiding people from possessing firearms, and such people are not a threat anyway. Laws like the Ordinance do not stop criminals and mass killers who are not troubled by violating rules related to carrying firearms. Instead, they give individuals with ill-intent "soft targets" where people are unlikely to be armed to resist them. In sum, the Ordinance burdens the right of self-defense for the law-abiding, while empowering violent predators who know that they are unlikely to face armed resistance at many public places in Glendale.

9.      Glendale's Ordinance is plainly unconstitutional. The Supreme Court has unequivocally confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y.*

---

[4] Moreover, even if an individual walked to the mall to avoid this issue, if *any* of the places they passed through, unbeknownst to the individual, were privately owned but were under some contract with the City, they would also be illegal to possess a firearm in under the Ordinance.

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

*State Rifle & Pistol Association v. Bruen*, 597 U.S. at __, 142 S. Ct. 2111 (2022) ("*Bruen*"). That right extends to any public area that is not a "sensitive place." *District of Columbia v. Heller*, 554 U.S. 570, 592, 626-27 (2008).

10.     The Supreme Court has not expressly established the universe of "sensitive places" where the right can be restricted. It has, however, provided the examples of schools and certain government buildings such as "legislative assemblies, polling places, and courthouses . . . ." *Bruen*, 142 S. Ct at 2133. Beyond those specific places, the Court has instructed courts to look to history in determining whether particular areas were considered "sensitive places" at either the time of our Nation's founding or the adoption of the Fourteenth Amendment. *Id.* at 2135-36. While it noted that there may be "new and analogous sensitive places" to those historically considered such, the Court also noted that the term could not be so broad as to "include all 'places where people typically congregate. . . .'" *Id.* at 2133 (citation omitted).

11.     Plaintiffs are either individuals or non-profit civil rights organizations representing their members who hold CCW permits and are affected by the Ordinance either because they live in Glendale or visit the City regularly.

12.     Plaintiffs bring this action to vindicate either their own or their members' Second Amendment rights to publicly bear arms for self-defense in non-sensitive places. The Ordinance infringes that right by criminalizing the mere possession of any firearm or ammunition on effectively all public property (as well as some private property) within the City of Glendale, predominantly including areas that have *not* historically been considered "sensitive places" to which Second Amendment protections do not extend.

13.     The City has the burden to prove that all areas included in the term "city property" are "sensitive places." *Bruen*, 142 S. Ct at 2129-30 (explaining that the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"). The City cannot meet

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1   that burden. While a few particular portions of "city property" could conceivably

2   qualify as a "sensitive place,", how the City defines that term is unconstitutionally

3   overbroad. Indeed, the Ordinance restricts firearm and ammunition possession on

4   *all* city property, including in open, unsecure places like parking lots, parking

5   structures, plazas, and (literally) open spaces. No historical analogue for restricting

6   arms in those areas exists. Otherwise, the right to bear arms could not be exercised

7   in populated areas, a notion the Supreme Court has expressly rejected. *Id*. at 2133-

8   34.

9         14.     Accordingly, Plaintiffs seek declaratory relief confirming that (1) the

10   Ordinance's expansive definition of "city property" includes places that have not

11   historically been considered "sensitive" to which Second Amendment protections

12   do not extend; and (2) the City's total restriction on average residents possessing a

13   firearm or ammunition in those non-sensitive places violates the Second and

14   Fourteenth Amendments.

15         15.     Plaintiffs also seek preliminary and permanent injunctive relief

16   enjoining the City from enforcing the Ordinance.

17                           **PARTIES**

18   **Plaintiffs**

19         16.     Plaintiff Nelson Gibbs lives in El Sereno, California, and is a law-

20   abiding citizen who has a CCW permit issued to him by the Los Angeles Police

21   Department. But for the Ordinance, he would carry in a number of non-sensitive

22   places where he currently cannot because they are considered "City Property". Mr.

23   Gibbs is a member of the California Rifle & Pistol Association, another Plaintiff in

24   this matter.

25         17.     Plaintiff John Leyba is a Los Angeles County resident who lived in

26   Glendale for most of his life. He is a law-abiding citizen who has a CCW permit

27   issued to him by the Los Angeles County Sheriff's Department. While he no longer

28   lives in the City, he visits nearly every day because his family still lives in

6

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

1   Glendale. But for the Ordinance, he would carry in a number of non-sensitive

2   places where he currently cannot because they are considered "City Property". Mr.

3   Leyba is a member of the California Rifle & Pistol Association, another Plaintiff in

4   this matter.

5       16.18. Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA")

6   is a non-profit membership and donor-supported organization qualified as tax-

7   exempt under 26 U.S.C. § 501(c)(4) with its headquarters in Fullerton, California.

8   Founded in 1875, the CRPA seeks to defend the civil rights of all law-abiding

9   individuals, including the fundamental right to bear firearms for lawful purposes,

10   including the core purpose of self-defense.

11      17.19. CRPA regularly participates as a party or amicus in litigation

12   challenging unlawful restrictions on the right to keep and bear arms. It also

13   provides guidance to California gun owners regarding their legal rights and

14   responsibilities. CRPA members include law enforcement officers, prosecutors,

15   professionals, firearm experts, and the general public.

16      18.20. CRPA members with CCW permits are harmed by the Ordinance

17   because it effectively makes their permits pointless in much of the City of Glendale

18   by declaring a multitude of places off limits for carry.

19      19.21. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit

20   membership organization. It is incorporated under the laws of the state of

21   Washington and was founded in 1974. SAF has over 700,000 members and

22   supporters nationwide, including thousands of members in California, many of

23   whom reside in Los Angeles county and live in or visit Glendale.

24      20.22. SAF is dedicated to promoting a better understanding about our

25   constitutional heritage to privately own, possess, and carry firearms through

26   educational and legal action programs designed to better inform the public about

27   gun control issues. SAF has been a pioneer in innovative defense of the right to

28   keep and bear arms, through its publications and public education programs like the

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1   Gun Rights Policy Conference. SAF also expends significant sums of money

2   sponsoring public interest litigation to defend its own interests to disseminate

3   information to like-minded individuals, in an individualized setting like a gun

4   show, but SAF also seeks to defend the interests of its members in lawsuits like this

5   present effort. SAF members with CCW permits are harmed by the Ordinance

6   because it effectively makes their permits pointless in much of the City of Glendale

7   by declaring a multitude of places off limits for carry.

8   ~~21.~~ 23. Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit

9   organization incorporated under the laws of the state of California, with

10  headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of

11  the Second Amendment in California. GOA members with CCW permits are

12  harmed by the Ordinance because it effectively makes their permits pointless in

13  much of the City of Glendale by declaring a multitude of places off limits for carry.

14  ~~22.     It should be noted that Plaintiffs did not file this suit alongside~~

15  ~~individual plaintiffs because they could not, in good conscience, bring individuals~~

16  ~~into this litigation until the newly enacted California Code of Civil Procedure~~

17  ~~section 1021.11 is enjoined. All three Plaintiffs have filed lawsuits to stop that~~

18  ~~blatantly unconstitutional fee shifting law, and once it is enjoined, this complaint~~

19  ~~will likely be amended to include individual plaintiffs as well. That said, Plaintiffs~~

20  ~~undoubtedly have associational standing on behalf of their members, and individual~~

21  ~~plaintiffs are not necessary for this lawsuit to proceed.~~

22  ~~23.~~ 24. The individual Plaintiffs, as well as m~~M~~embers of the associational

23  Plaintiffs with CCW permits intend to immediately ~~to~~ exercise their constitutional

24  right to carry a firearm in public for self-defense in all non-sensitive places in

25  Glendale, but only refrain because they are precluded from doing so because of the

26  Ordinance. But for Defendants' enforcement of municipal laws that prohibit the

27  individual Plaintiffs and members of the associational Plaintiffs with CCW permits

28  from lawfully carrying a firearm in public, they would immediately begin carrying

8

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

1 a firearm in public for self-defense in all non-sensitive places in Glendale.

2 **Defendants**

3 24.25. Defendant City of Glendale (the "City") is an incorporated city in Los

4 Angeles County, California. The City is the entity that enacted, and is beneficially

5 interested in, the Ordinance.

6 25.26. Defendant Carl Povilaitis is the Chief of Police of the Glendale Police

7 Department. He is sued in his official capacity. He is charged with enforcing the

8 Ordinance, as codified in the Glendale Municipal Code.

9 26.27. Defendant Suzie Abajian is the City Clerk of Glendale. She is sued in

10 her official capacity. She is charged with recording, keeping, and printing the

11 ordinances of the City, including the Ordinance that is the subject matter of this

12 Complaint.

13 27.28. Based on information and belief, Plaintiffs allege that Does 1 through

14 10 are responsible for establishing, enforcing, or administering Glendale's

15 unconstitutional Ordinance, or are otherwise responsible for denying or limiting

16 Plaintiffs' members' right to bear arms. Plaintiffs will seek leave to amend this

17 Complaint when the true names and identities of Does 1 through 10 are

18 ascertained.

19 **JURISDICTION AND VENUE**

20 28.29. The Court has original jurisdiction of this civil action under 28 U.S.C.

21 § 1331, because the action arises under the Constitution and laws of the United

22 States, thus raising federal questions. The Court also has jurisdiction under 28

23 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the

24 deprivation, under color of the laws, statutes, ordinances, regulations, customs and

25 usages of the State of California and political subdivisions thereof, of rights,

26 privileges or immunities secured by the United States Constitution and by Acts of

27 Congress.

28 29.30. Plaintiffs' claims for declaratory and injunctive relief are authorized by

9

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1   28 U.S.C. §§ 2201-2202, and their claim for attorneys' fees is authorized by 42

2   U.S.C. §1988.

3   ~~30.~~31. Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2)

4   because a substantial part of the events or omissions giving rise to the claims

5   occurred in this district, and Glendale is located within the Western Division of the

6   Central District.

7   **GENERAL ALLEGATIONS**

8   **[Right to Keep and Bear Arms]**

9   ~~31.~~32. The Second Amendment to the United States Constitution provides:

10  "A well regulated Militia, being necessary to the security of a free State, the right of

11  the people to keep and bear Arms, shall not be infringed." U.S. CONST amend. II.

12  ~~32.~~33. The Supreme Court has held that the Second Amendment right to keep

13  and bear arms is a fundamental, individual right that includes at its core the right of

14  law-abiding, competent adults to "possess and carry weapons in case of

15  confrontation." *Heller*, 554 U.S. at 592.

16  ~~33.~~34. The Supreme Court has also held that the Second Amendment right to

17  keep and bear arms, by way of its incorporation into the Fourteenth Amendment,

18  applies equally to prohibit infringement of that right by state and local

19  governments. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

20  ~~34.~~35. *Heller* established a "text, history, and tradition" framework for

21  analyzing scope of the Second Amendment questions. *Bruen*, 142 S. Ct. at 2127-29,

22  citing *Heller*, 554 U.S. at 634. The Court then assessed historical evidence to

23  determine the prevailing understanding of the Second Amendment at the time of its

24  ratification in 1791, and thereafter. Based on that assessment, the Court concluded

25  that the District of Columbia statute which prohibited possession of the most

26  common type of firearm in the nation (the handgun) lacked a Revolutionary-era

27  analog, did not comport with the historical understanding of the scope of the right,

28  and therefore violated the Second Amendment.

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

35.36. Most recently, the Supreme Court confirmed and clarified *Heller*'s

historical approach to analyzing the Second Amendment's scope:

> We reiterate that the standard for applying the Second Amendment is
> as follows: When the Second Amendment's plain text covers an
> individual's conduct, the Constitution presumptively protects that
> conduct. The government must then justify its regulation by
> demonstrating that it is consistent with the Nation's historical tradition
> of firearm regulation. Only then may a court conclude that the
> individual's conduct falls outside the Second Amendment's
> "unqualified command".

*Bruen*, 142 S. Ct. at 2126.

36.37. In applying that test, the *Bruen* Court confirmed "that the Second and

Fourteenth Amendments protect an individual's right to carry a handgun for self-

defense outside the home." *Id*. at 2122.

37.38. To be sure, the Supreme Court has noted that the carrying of arms may

be restricted in certain "sensitive places." But the Court has also noted that "the

historical record yields relatively few 18th- and 19th-century 'sensitive places'

where weapons were altogether prohibited . . . ." *Id*. at 2133. So far, the Court has

only identified schools and certain government buildings such as "legislative

assemblies, polling places, and courthouses . . ." as being such "sensitive places."

*Ibid*. Further, the Court cautioned that "expanding the category of 'sensitive

places' simply to all places of public congregation that are not isolated from law

enforcement defines the category of 'sensitive places' far too broadly…[it] would

in effect exempt cities from the Second Amendment and would eviscerate the

general right to publicly carry arms for self-defense." *Id*. at 2134.

39. The Second and Fourteenth Amendments thus guarantee to all law-

abiding, competent adults the right to carry firearms and ammunition for self-

defense in all public areas that have *not* historically been considered "sensitive

places" or are analogous to such places.

38.

**Formatted:** Font: 14 pt

**Formatted:** Normal, No bullets or numbering

11

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

**[Americans With CCW Permits are Overwhelmingly Law-Abiding]**

39.40. Even before the *Bruen* ruling, over 40 states were either "shall issue," where a permit must be issued to all citizens who apply and qualify for one, or "constitutional carry," where anyone who is legally allowed to own a gun may carry a pistol concealed or openly without a permit. Millions of law-abiding Americans have legally carried firearms for years.

40.41. Because California permit-issuance is done at the county level, most counties in the state were effectively "shall issue" despite the unconstitutional good cause requirement that was previously allowed to be enforced. For instance, Tehama County Sheriff's Department states on its Concealed Weapons Permits website that "Sheriff-Coroner Dave Hencratt supports the right of law-abiding citizens to keep and bear arms. In this regard, all qualified residents of Tehama County are eligible to apply for a permit to carry concealed weapons."[5] As another example, San Joaquin County Sheriff's Department expressly states on its website that "[p]ersonal protection or self-defense is sufficient to establish good cause" for the issuance of a permit.[6]

41.42. Despite most counties in California being effectively "shall issue" for a long time, there has been no crime problem resulting from people issued CCW permits in those counties. In fact, when the state recently tried to pass a law (Senate Bill 918) that would have violated the right to carry by making most public places off limits even for those with a CCW permit, it was opposed by the California State Sheriffs Association partially because of the fact that people with CCW permits almost never commit crimes and are not a problem for law enforcement. The Association stated in a letter to all members of the California State Assembly that

---

[5] "Concealed Weapons Permits - Tehama County Sheriff's Office," <https://tehamaso.org/administration/licenses-permits/concealed-weapons/> (as of October 6, 2022).

[6] "Concealed Weapon Permit | San Joaquin County Sheriff's Office," <https://www.sjsheriff.com/concealed-weapon-permit/> (as of October 6, 2022).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

SB 918 "greatly restricts when and where licensees may carry concealed and could severely restrict the exercising of [the right to bear arms]…*individuals who go through the process to carry concealed legally are exceedingly unlikely to violate the law*, yet SB 918 turns much of the state into 'no-carry' zones that will do nothing to foster public safety." (Italics added.)

~~42.~~43. The evidence available from other states also establishes how overwhelmingly peaceable and law-abiding people with CCW permits are.  As one example, in 2020 Texas had 1,626,242 active conceal carry weapon license holders.[7] That made people with such licenses 5.7% of Texas's population, yet according to the Texas Department of Public Safety, they only committed 0.4334% of the State's serious crimes, being responsible for just 114 out of a total of 26,304 convictions. Even among those few convictions, only some of the crimes involved a gun at all. And of the ones that do, license holders are responsible an even smaller proportion of them. For example, there were 1,441 convictions for aggravated assault with a deadly weapon in 2020, but people with a valid concealed weapon license were responsible for just 4 of those, or 0.2776% of the total, again way below their 5.7% share of the population as a whole.

~~43.~~44. The State of Florida confirms this phenomenon as well. As of September 30, 2022, the State had issued a total of 5,485,676 concealed weapon licenses since October 1, 1987, of which 2,578,630 are currently active.[8] In that nearly 25-year timespan, only 17,286 permits have been revoked without being subsequently reinstated, or roughly 0.3% of the total issued.

~~44.~~45. Florida was the state where the modern right-to-carry movement originally gathered steam (though a handful of states had liberal permit-issuance

---

[7]  All data for Texas is from the Texas Department of Public Safety and can be found at <https://www.dps.texas.gov/section/handgun-licensing/demographic-reports-fiscal-year-2020> (as of October 6, 2022).

[8]  All data for Florida is from the Florida Division of Licensing and can be found at < https://www.fdacs.gov/Divisions-Offices/Licensing/Statistical-Reports> (as of October 6, 2022).

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

1   policies before then). The State's enactment of shall-issue permitting was met with

2   breathless predictions of wild-west style violence and "blood in the streets", but

3   none of that happened. Indeed, at least one prominent opponent admitted his error,

4   with Florida Representative Ronald A. Silver stating in 1990 that "There are lots of

5   people, including myself, who thought things would be a lot worse as far as that

6   particular situation [carry reform] is concerned. I'm happy to say they're not."

7   Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed*

8   *Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 692-93 (1995). John Fuller, general

9   counsel for the Florida Sheriffs Associated, added: "I haven't seen where we have

10  had any instance of persons with permits causing violent crimes, and I'm constantly

11  on the lookout." *Id*. The Metro Dade Police Department originally kept detailed

12  records of every incident involving concealed weapon licensees from enactment of

13  the new law in 1987 until August 31, 1992. They stopped doing so because the

14  rarity of such incidents made the effort a waste of time. *Id.*

15      45.46. Finally, the State of Minnesota goes a step further and identifies not

16  just the infrequent crimes committed by people with valid carry permits, but also

17  what proportion of those crimes involve firearms. According to the Minnesota

18  Department of Public Safety, the state had 387,013 valid carry permits in 2021, and

19  only 40 permits were revoked that year.[9] In addition, 3,863 crimes were committed

20  by people with carry permits. This sounds much larger than the statistics from

21  Texas or Florida, but that's simply because Minnesota greatly expands the

22  definition of what constitutes a "crime". Indeed, of those 3,863 crimes, more than

23  60% were DWIs or other traffic offenses. Just over 2% of the crimes, or about 80 of

24  them, were crimes in which a firearm was used in furtherance of the crime. In other

25

26

_____

27  [9]  All data for Minnesota is from the Minnesota Department of Public Safety
    Bureau of Criminal Apprehension and can be found at

28  <https://dps.mn.gov/divisions/ooc/ news-releases/Pages/BCA-Releases-2021-
    Permit-to-Carry-Annual-Report.aspx> (as of August 14, 2022).

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1    words, in Minnesota, only about 0.02% of people with carry permits used a firearm

2    in furtherance of a crime in 2021.

3        46.47. There are certainly more states with similar data that could be

4    examined here, but Plaintiffs believe these three examples, along with the

5    California State Sheriffs Association's letter regarding the failed SB 918, make the

6    point: Even if Defendants could use "public safety" as a reason to curtail the right

7    to carry in places that aren't truly sensitive, and they cannot because *Bruen* forbade

8    such interest balancing, people with carry permits are dramatically more law

9    abiding than the population as a whole and are thus very unlikely to ever pose a

10   threat the City needs to concern itself with. Fear of CCW permit holders is

11   completely irrational, given these statistics. The Ordinance is thus a solution in

12   search of a problem, but unfortunately, one which dramatically violates Plaintiffs'

13   constitutional right to carry.

14                        **[Glendale's Ordinance]**

15       47.48. Glendale Municipal Code section 9.25.040(A) (the "Ordinance"),

16   provides:

17       No person shall:

18       A.   Bring onto or possess on city property:

19            i.   A firearm, loaded or unloaded.
             ii.  Ammunition for a firearm.
20

21       48.49. The term "city property" in the Ordinance:

22   Means real property, including any buildings thereon, owned, leased,
     or subleased by the City of Glendale ("city") and in the city's
23   possession—or in the possession of a public or private entity,
     corporation, or person under contract with the city to perform a public
24   purpose—including, but not limited to, the following property: parks,
     playgrounds, open space, plazas, community centers, facilities
25   (including the Glendale Civic Auditorium, the city's civic center
     complex, and city libraries), parking lots, and parking structures.

26   *Id*. at § 9.25.030 (2022).

27       The term, however, "[d]oes not include the public right-of-way owned by the

28   city, including any area across, along, on, over, upon, and within the dedicated

                                     15
     ─────────────────────────────────────────────────────
     FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1    public alleys, boulevards, courts, lanes, roads, sidewalks, streets, and ways within

2    the city." *Id.*

3    49.50. As of 2013, when the City made legislative findings concerning the

4    Ordinance, City Property on which firearms were banned included, but was not

5    limited to: 47 parks and recreation facilities (including four community centers, one

6    golf course, three soccer fields, and sixteen ball fields), all City playgrounds, eight

7    public libraries, three downtown parking structures and other City-owned or

8    operated parking lots, the Glendale Civic Auditorium and civic center complex, a

9    youth center, an emergency center,  undefined "open spaces" and "plazas," and an

10   unknowable amount of properties in the possession of private companies under

11   contract with the city. Plaintiffs are not aware what other property the City may

12   own that was not listed in the 2013 findings (including property the City may have

13   acquired or taken under its control since those findings were made) but any such

14   property would be included as well.

15   50.51. The term "ammunition" as used in the Ordinance "means any

16   ammunition as defined in California Penal Code section 16150 []." *Id*. California

17   Penal Code section 16150 includes as "ammunition" (1) any "loaded cartridges

18   consisting of a primed case, propellant, and with one or more projectiles;" and (2)

19   "any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding

20   device, or projectile capable of being fired from a firearm with a deadly

21   consequence," but "does not include blanks."

22   51.52. The term "firearm" as used in the Ordinance "Means any gun, pistol,

23   revolver, rifle, or any device, designed or modified to be used as a weapon, from

24   which is expelled through a barrel a projectile by the force of an explosion or other

25   form of combustion," including any "firearm" as defined in California Penal Code

26   section 16520; any "BB device" as defined in California Penal Code Section 16250;

27   and any "imitation firearm" as defined in California Penal Code Section 16700(a).

28   GLENDALE, CAL. MUNICIPAL CODE § 9.25.030 (2022)

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1    ~~52.~~53. The term "unloaded" as used in the Ordinance means:

2         a.  No ammunition is in the firearm's chamber or cylinder; and

3         b.  No ammunition, clip, tube, speed loader, or magazine that is
           compatible with the firearm and that contains ammunition is
4           on the person who is carrying the firearm.

5    ~~53.~~54. The only exceptions to the Ordinance apply to specific, limited groups

6    of people, such as law enforcement, military, security guards, those delivering

7    firearms or ammunition to Glendale police, and authorized participants in

8    entertainment productions, or to persons lawfully relinquishing their firearms to

9    Glendale police. *Id*. at § 9.25.050.[10] There is no exception for people with valid

10   CCW permits.

11   ~~54.~~55. The Ordinance's related "Findings" note that "the city council, in its

12   proprietary capacity, wishes to keep city properties free from firearms and

13   ammunition . . ., with the [indicated] exceptions." *Id*. at § 9.25.020. Of course, that

14   violates *Bruen*, which mandates that the right to carry be allowed in all non-

15   sensitive places.

16   ~~55.~~56. Penalties for violating the Ordinance, which the City classifies as a

17   misdemeanor, include a fine of up to $1,000.00, imprisonment for up to six months,

18   or both. *Id*. at § 1.20.010 (A).

19                    **[Relevant California Firearm Laws]**

20   ~~56.~~57. California law generally prohibits carrying firearms on one's person or

21   within a vehicle (unless it is unloaded and in a locked container) in all public

22   places[11] other than remote locations where the discharge of firearms is not

23

24   _____

25   [10]  There is an exception for "using the City's target range" but it is meaningless
     because no such range exists. GLENDALE, CAL. MUNICIPAL CODE § 9.25.050 (2022).

26   [11]  California's carry laws do not define the term "public place." Whether a location
     is deemed a public place depends on the specific facts of each case and
27   appropriately turns on whether the public can lawfully enter the area with little
     difficulty. *See*, *e.g.*, *People v. Cruz*, 44 Cal. 4th 636, 674 (2008).
28

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

1   prohibited. *See* CAL. PENAL CODE §§ 25850, 25400,  26350 & 26400 (Deering

2   2022).

3       ~~57.~~58. However, California authorizes city police chiefs and county sheriffs

4   to issue concealed CCW permits to their residents, which licenses allow the

5   licensees to carry a loaded handgun concealed in public. *Id.* §§ 26150-26155.

6   Outside of certain remote locations, there is no lawful way to generally carry a

7   firearm publicly in California other than having such a CCW permit. Californians'

8   right to bear arms thus depends on them obtaining such license.[12] A license to carry

9   concealed is generally valid statewide. *Id.* § 26200.

10   **[Abrogation of Plaintiffs' ~~Members'~~ Right to Bear Arms and Right to Due**

11                                                       **Process]**

12       ~~58.~~59. The individual Plaintiffs as well as the associational Plaintiffs'

13   members, or at least the overwhelming majority of them, do not meet any of the

14   narrow exceptions to the Ordinance's restriction on possessing firearm or

15   ammunition on "city property."

16       ~~59.~~60. As described above, the Ordinance prohibits the individual Plaintiffs

17   and members of the associational Plaintiffs with CCW permits from possessing a

18   firearm or ammunition on almost all public property within the City of Glendale, as

19   well as some private property if it is under contract to perform a public purpose.

20   Indeed, the only public property where firearms or ammunition can be possessed

21   under the Ordinance are on roads/streets and sidewalks.

22       ~~60.~~61. This of course violates the right to carry as discussed in *Bruen*. There,

23   the Court said that while some places are sensitive, the historical record supports

24   the existence of "relatively few" such sensitive places. *Bruen*, at 2133. None of

25   ―――――――――――

[12] Until recently, California law required "good cause" to issue a permit. CAL.
26 PENAL CODE § 26150(a)(2) (Deering 2022). That requirement fails under *Bruen*, as
the Attorney General of California has already confirmed through a legal alert
27 memorandum he sent out directing state and local officials to cease enforcing it. A
copy of that legal alert can be found here: <https://crpa.org/news/blogs/ag-bonta-
28 good-cause-requirement-is-unconstitutional/> (as of October 6, 2022).

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~

1  Glendale's city property as defined in the Ordinance appears to qualify as a

2  "sensitive place" where restrictions on firearm and ammunition possession have

3  traditionally been allowed.[13] There is no "well-established and representative

4  historical analogue," *id*., for restricting carry in parks and recreation facilities,

5  playgrounds, public libraries, parking structures and other parking lots, civic

6  centers, undefined "open spaces" and "plazas", and properties in the possession of

7  private companies under contract with the city.

8      61.62. The Ordinance thus precludes the individual Plaintiffs' and the

9  associational Plaintiffs' members from exercising their Second Amendment rights

10  to bear arms for self-defense in several areas where those rights are guaranteed, i.e.,

11  *non*-sensitive places.

12      62.63. Defendants also violate the individual Plaintiffs' and the associational

13  Plaintiffs' members' Due Process rights by not requiring all places where carry is

14  forbidden to put up signs clearly stating that to be the case. Members of the

15  associational Plaintiffs with CCW permits may have no idea a particular place is off

16  limits for carry (e.g., when they aren't aware that a parking structure they entered is

17  owned by the City, or when a private business they entered is under some contract

18  with the City, etc.), so they would be committing a crime they had no notice of

19  ahead of time.

20      63.64. As the Supreme Court has established, the general maxim that

21  ignorance of the law is no excuse is limited by the Due Process requirement of

22  notice. "Ingrained in our concept of due process is the requirement of notice. Notice

23  is sometimes essential so that the citizen has the chance to defend charges. Notice is

24  required before property interests are disturbed, before assessments are made,

25  before penalties are assessed." *Lambert v. California*, 355 U.S. 225, 228 (1957). By

26

27  ─────────────
   [13]  To the extent the City owns or operates any schools, courthouses, or closely
28  analogous places like that which are actually sensitive under *Heller* and *Bruen*,
   Plaintiffs do not challenge restrictions on carrying in such places with this lawsuit.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1   not requiring the posting of signs wherever the right to carry is prohibited, the City

2   robs Plaintiffs' members who are exercising their right to carry of notice.

3       64.65. In sum, but for the Ordinance prohibiting the carrying of firearms in

4   non-sensitive places, the individual Plaintiffs as well as members of the

5   associational Plaintiffs with CCW permits would carry firearms and ammunition on

6   all City property in Glendale for the lawful purpose of self-defense. They refrain

7   from exercising that constitutional right for fear of criminal liability for violating

8   the Ordinance, and also because due to the lack of signage notifying them whether

9   particular places are prohibited, they would have no notice if they inadvertently

10  carried somewhere they shouldn't.

11              **DECLARATORY RELIEF ALLEGATIONS**

12      65.66. There is an actual and present controversy between the parties.

13  Plaintiffs contend that the City's Ordinance is unconstitutional both facially and as

14  applied to the individual Plaintiffs and the associational Plaintiffs' members

15  because it precludes Plaintiffs' membersthem and other law-abiding individuals

16  from exercising their fundamental right to publicly bear arms in *non*-sensitive

17  places. The City denies and disputes this. Plaintiffs desire a judicial declaration of

18  their rights and of the duties of the City in this matter.

19      66.67. Plaintiffs also allege that the Ordinance, in not requiring all places

20  where carry is forbidden to post signs clearly stating so, violates the right to Due

21  Process both facially and as applied to them or to their members. Their

22  membersThe individual Plaintiffs as well as members of the associational Plaintiffs

23  will frequently not have notice as to whether a particular place in Glendale prohibits

24  carry otherwise. Defendants deny and dispute this. Plaintiffs desire a judicial

25  declaration of their rights and of the duties of the City in this matter on this

26  question.

27              **INJUNCTIVE RELIEF ALLEGATIONS**

28

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

67.68. Injunctive relief is necessary to prevent the City from enforcing its Ordinances' restrictions. If an injunction does not issue, Plaintiffs will continue to be irreparably injured by the Ordinance insofar as it precludes Plaintiffs' them or their members from exercising rights guaranteed by the Second and Fourteenth Amendments. The City's enforcement of the Ordinance denies the individual Plaintiffs as well as associational Plaintiffs' members the right to possess firearms or ammunition in places that they are constitutionally entitled to do so, including for the lawful purpose of carrying those arms for self-defense, without subjecting themselves to risk of criminal prosecution.

68.69. The Ordinance also contains no signage requirement for places where carry is forbidden, so the individual Plaintiffs as well as associational Plaintiffs' members have no notice of whether or not they are violating the law at many of the places they would like to carry. This violates the individual Plaintiffs as well as the associational Plaintiffs' members'members' Due Process rights guaranteed by the Fourteenth Amendment. To the extent that this Court deems any City property in Glendale to qualify as a "sensitive place", the City should be required to post signs notifying people of that.

69.70. If not enjoined by this Court, Defendant will continue to enforce the Ordinance in derogation of Plaintiffs' members' Second and Fourteenth Amendment rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate and unascertainable, and would not fully redress any harm suffered by the individual Plaintiffs as well as associational Plaintiffs' members as a result of being unable to engage in activity protected by the Second and Fourteenth Amendments, as they wish to do.

70.71. The injunctive relief sought would eliminate that irreparable harm and allow the individual Plaintiffs as well as associational Plaintiffs' members to exercise their right to possess a firearm and ammunition in *non*-sensitive public places, including for self-defense. Accordingly, injunctive relief is appropriate.

21

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

71.72. Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

72.73. The Ordinance prohibits possession of firearms and ammunition on almost all public property within Glendale, as well as some private property. The areas that the Ordinance covers include areas that are *not* "sensitive places" where restrictions on firearm and ammunition possession have traditionally been allowed, nor are they analogous to such places.

73.74. The individual Plaintiffs as well as the associational Plaintiffs' members do not qualify for any of the Ordinance's exceptions. As a result, they are prohibited from possessing a firearm or ammunition on any "city property," which term includes areas that are *not* "sensitive places."

74.75. By prohibiting law-abiding adults, like the individual Plaintiffs as well as the associational Plaintiffs' members, from bearing arms for self-defense in places where the Second and Fourteenth Amendments guarantee their right to do so, the Ordinance violates those Amendments.

75.76. The City is thus propagating customs, policies, and practices that deprive Glendale residents and others visiting the City of Glendale, including Plaintiffs' and the members of the associational Plaintiffs, of their constitutional right to bear arms for self-defense "in case of confrontation" in *non*-sensitive public places, as guaranteed by the Second and Fourteenth Amendments.

76.77. The City cannot satisfy its burden to justify these customs, policies, and practices that preclude the individual Plaintiffs as well as the associational Plaintiffs' members from exercising those fundamental rights.

77.78. Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

22

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**RIGHT TO DUE PROCESS (NOTICE)**
**42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

78.79. Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

79.80. The Ordinance prohibits the individual Plaintiffs as well as the associational Plaintiffs' members with CCW permits from carrying in several non-sensitive places, in violation of the Constitution. The areas that the Ordinance covers include areas that are not "sensitive places" where restrictions on firearm and ammunition possession have traditionally been allowed, nor are they analogous to such places.

80.81. As a result, the individual Plaintiffs as well as the associational Plaintiffs' members are prohibited from possessing a firearm or ammunition on any of the places listed in the Ordinance, which includes many areas that are not "sensitive places".

81.82. The Ordinance, however, contains no requirement that all the places it forbids Plaintiffs' members from carrying in post a sign notifying them that carry is prohibited there. The individual Plaintiffs as well as the associational Plaintiffs' members thus risk inadvertently entering a place where carry is prohibited despite their CCW permits, putting them in legal jeopardy. While some places may be obviously off limits, such as schools or courthouses, most others are not nearly as clear.

82.83. In this way, the Ordinance violates the individual Plaintiffs as well as the associational Plaintiffs' members' Due Process rights by not providing them sufficient notice. "Ingrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed." *Lambert*, 355 U.S. at 228.

23

1    83. 84. Defendants are thus propagating customs, policies, and practices that

2    deprive the individual Plaintiffs as well as the associational Plaintiffs' members of

3    their constitutional right to due process, as guaranteed by the Fourteenth

4    Amendment.

5    84. 85. Defendants cannot satisfy their burden to justify these customs,

6    policies, and practices that violate due process.

7    85. 86. Plaintiffs are thus entitled to declaratory and injunctive relief against

8    such unconstitutional customs, policies, and practices.

9                                **PRAYER**

10   WHEREFORE, Plaintiffs request that judgment be entered in their favor and

11   against Defendants as follows:

12   1.    A declaration that Glendale Municipal Code section 9.25.030's

13   definition of "city property" includes areas that are not "sensitive places" where

14   restrictions on firearm and ammunition possession have traditionally been tolerated

15   under the Second Amendment;

16   2.    A declaration that Glendale Municipal Code section 9.25.040(A)

17   violates the Second and Fourteenth Amendments facially and as applied to the

18   individual Plaintiffs as well as the associational Plaintiffs' members insomuch as it

19   precludes law-abiding citizens from possessing a firearm or ammunition in public

20   areas that are not "sensitive places" where restrictions on firearm and ammunition

21   possession have traditionally been allowed because those Amendments guarantee

22   the rights of responsible, law-abiding citizens to carry arms for self-defense in *non*-

23   sensitive public places;

24   3.    A declaration that Glendale Municipal Code section 9.25.040(A)

25   violates due process by not requiring signage in all places that are off limits for

26   carry, thus robbing the individual Plaintiffs as well as the associational Plaintiffs'

27   members of notice regarding whether or not they are violating the law;

28

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE

1      4.     An order preliminarily and permanently enjoining the City and all

2  officers, agents, servants, employees, and persons under the authority of the City,

3  from enforcing Glendale Municipal Code section 9.25.040(A);

4      5.     Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

5  § 1988; and

6      6.     Any further or alternative relief as the Court deems just and proper.

7  Respectfully Submitted,

8  Dated:  January 4, 2023~~January 4, 2023~~~~January 2, 2023~~     **MICHEL & ASSOCIATES, P.C.**

9                                                                    */s/ C.D. Michel*

10                                                                   C.D. Michel
                                                                     Counsel for Plaintiffs California Rifle & Pistol
11                                                                   Association, Incorporated, ~~and~~ Gun Owners of
                                                                     California, Inc., Nelson Gibbs, and John Leyba

12

13  Dated:  January 4, 2023~~January 4, 2023~~~~January 2, 2023~~     **LAW OFFICES OF DON KILMER**

14                                                                   */s/ Don Kilmer*
                                                                     Don Kilmer
15                                                                   Counsel for Plaintiff Second Amendment
                                                                     Foundation

16

17

18

19

20

21

22

23

24

25

26

27

28

---

25

FIRST AMENDED COMPLAINT ~~FOR DECLARATORY AND INJUNCTIVE~~